In The Matter Of: Deborah D. JOHNSON, Debtor.

EQUITY MORTGAGE, INC., Movant,

v.

Deborah D. JOHNSON, Martin W. Hoffman, Trustee, Respondents.

Bankruptcy No. 2–92–00673.

United States Bankruptcy Court, D. Connecticut.

Jan. 5, 1993.

Martin W. Hoffman, Hartford, CT, for trustee-respondent.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM STAY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

Before the court in this chapter 7 case is a creditor-mortgagee's motion for relief from stay in order to continue a pending foreclosure action in state court. The debtor and the estate trustee (the respondents) contend that during the hearing on the motion they established the existence of several bona fide claims to be set off against the movant's debt in a potential dollar amount sufficient to justify denial of the motion. *See Resolution Trust Corp. v. Shehu (In re Shehu)*, 128 B.R. 26, 29 (Bankr.Conn.1991). (In context of motion for relief from stay, indirect defenses going to offset amount of secured debt are not subject to full scale trial on merits; issue is instead limited to whether respondents have presented sufficient evidence of bona fides of their claims for court to deny motion for relief from stay.) The debtor asserts setoffs based upon claims of unconscionability and of violations of the Truth In Lending Act (TILA) (15 U.S.C. § 1601 *et seq.*); the Real Estate Settlement Procedure Act (RESPA) (12 U.S.C. § 2601 *et seq.*); and the Connecticut Unfair Trade Practices Act (CUTPA) (Conn.Gen.Stat. § 42–110b *et seq.*). Martin W. Hoffman, the trustee, alleges "the debt and mortgage are void or avoidable by the Trustee for the reason that they are unconscionable" and that the debt should be "subordinated to the claims of all the other creditors in this case and the lien of its alleged mortgage transferred to the estate pursuant to 11 U.S.C. § 510(c) for the reason that the Movant engaged in inequitable conduct." *Trustee's Answer to Motion.*

The movant denies that any setoffs to its debt exist, but that in any event the respondents are barred by the doctrine of *res*

Alfred J. Onorato, New Haven, CT, for movant.

Edward C. Taiman, Jr., Germain & Associates, Hartford, CT, for debtor-respondent.

*judicata* from collaterally attacking a state-court foreclosure judgment.

The following background is based upon the record made at trial, uncontroverted assertions contained in the parties' memoranda and the debtor's petition and schedules.

## II.

## BACKGROUND

The debtor, Deborah D. Johnson, resides with her family at 28 East Burnham Street, Hartford, Connecticut (the property). She had purchased the property, a single-family dwelling, in 1984 for $40,000.00, with mortgage financing of $38,900.00 obtained from the Connecticut Housing Finance Authority (CHFA). On or about August 17, 1988, CHFA started a mortgage foreclosure action against the property. At about the same time, the debtor approached both the CHFA and the credit union at her place of employment in an attempt to secure refinancing of the defaulted mortgage debt, but her requests were denied.

In late August, 1988, the debtor was visited at her home by Mark Lebow (Lebow), a Connecticut-licensed mortgage broker. Lebow's methods of finding customers for his services included examining town land records to locate notices of pending foreclosures. He then contacted the mortgagor-owners to see if they were interested in using him to secure mortgage refinancing, provided the owner had equity in the property being foreclosed. If retained, Lebow would seek to place the new mortgage with those private lenders who take higher risk investments and demand high interest rates. Lebow followed this practice in approaching the debtor who then gave Lebow $200.00 to start the mortgage refinance process.

Lebow contacted Equity Mortgage, Inc., the movant, with whom he had previously placed numerous mortgage loans. Based upon the debtor's application (filled out and submitted by Lebow), the movant agreed to refinance the debtor's CHFA mortgage loan. Lebow returned to the debtor's home on or about September 3, 1988, advised her of the movant's willingness to make the loan, reviewed with her his fee of 6% of the loan, the movant's origination fee of 10% of the loan, and the interest rate and other loan terms. The debtor asked Lebow to advise the movant that she wished to keep the monthly mortgage payment to approximately $700.00. The debtor subsequently requested, and the movant agreed, that the mortgage loan be increased so that the debtor could receive cash at the mortgage closing sufficient to pay off her car loan.

On September 19, 1988, the debtor appeared at the movant's office for the mortgage closing without an attorney to represent her. The movant's attorney who conducted the closing, Charles F. Costanzo, testified at trial that he would have advised the debtor of her right to be represented and reviewed with her the charges listed in a "Truth In Lending Disclosure Statement of Loan" (disclosure statement) and "Closing Statement". The debtor executed both of these statements, as well as a promissory note for $54,500.00 and a mortgage deed. The note was for a term of three years and provided for monthly payments of interest only of $726.67, with a computed interest rate of 21.48% per annum taking into account the $5,450.00 origination fee. The disclosure statement listed closing costs totaling $4,824.00, in addition to the origination fee of $5,450.00. The debtor received $3,236.15 in cash at the closing, after payment of $40,528.85 to CHFA, and two other nonrelevant charges totaling $561.00.

The debtor made approximately 18 monthly mortgage payments to the movant before defaulting on a payment in May, 1990. The movant brought a mortgage-foreclosure action in September 1991. The debtor entered a *pro se* appearance in the action, but failed to disclose a defense or plead and was accordingly defaulted by the state court. The state court entered a judgment of strict foreclosure on December 9, 1991 which determined the debt due the movant from the debtor to be $73,008.00, plus costs of $1,650.00, and which set February 24, 1992 as the debtor's law day to redeem.

The debtor filed her chapter 7 bankruptcy petition on February 21, 1992, and the movant commenced the present relief from stay proceeding on April 6, 1992. The movant and the respondents stipulated at the hearing that the present value of the property is $65,000.00.

The debtor, who is 37 years old, has been employed for the past 14 years as a machinist at Pratt & Whitney Company and earned $28,000.00 in 1991. She is a high school graduate and attended a local community college for three months.

## III.

## DISCUSSION

### A.

■ The first issue to be addressed is whether the doctrine of claim preclusion (*res judicata*) applies to the prepetition default judgment rendered against the debtor in the state foreclosure court. As a general rule, a bankruptcy court's equitable powers do not permit it to disregard the preclusive effect of a state-court default judgment where the rendering court had jurisdiction and the judgment was obtained by a creditor without fraud or collusion. *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir.1987), *cert. denied* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

■ . Connecticut law recognizes a default judgment as a final one, *In re Novak*, 37 B.R. 31, 32–33 (Bankr.D.Conn.1983), and a debtor's filing of a bankruptcy petition prior to the completion of the debtor's appeal from a final judgment does not permit the bankruptcy court to retry the creditor's claim. *Westport Taxi Serv. v. Westport Transit Dist. (In re Westport Transit Dist.)*, 141 B.R. 543 (Bankr.D.Conn.1992). The fact that the movant's foreclosure action was not completed at the time of the debtor's bankruptcy petition does not prevent use of a final ruling on the amount of a debt as *res judicata*. *See e.g. Metromedia Co. v. Fugazy*, 982 F.2d 769 (2nd Cir. 1992) ("As to the need for finality of decision, collateral estoppel, unlike appealability under 28 U.S.C. § 1291 (1988), does not require a judgment which ends the litigation … and leaves nothing for the court to do but execute the judgment…. Rather the concept of finality for collateral estoppel purposes includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.") (Internal citations and quotation marks omitted.)

The respondents argue in their joint post-trial brief that the state-court judgment resulted from a fraud in that a third party misled the debtor into filing a *pro se* appearance in the state court, and the debtor mistakenly did not attend any of the foreclosure proceedings prior to the entry of the default judgment.[1] The debtor's bankruptcy schedules list as an asset a claim against the third party. The respondents, however, do not implicate the movant in any way with this alleged deception.

■ In line with the cited authorities,[2] the court concludes that neither the debtor nor the trustee can collaterally attack in the bankruptcy court the state-court judgment determining the debt by asserting setoff based on violations of TILA, RESPA and CUTPA or on the doctrine of unconscionability.[3]

### B.

Bankruptcy Code § 510(c) provides that a bankruptcy court may "(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim …; or (2) order that any lien securing such a subordinated claim be

---

1. No such evidence was introduced at trial. The court requested the parties, post-hearing, to brief the issue of the effect of the entry of the state-court default judgment.

2. *Bowers v. Conn. Nat'l. Bank*, 78 B.R. 388 (D.Conn.1987) upon which the respondents rely is not deemed apposite.

3. Although not necessary to decide in light of this ruling, the court notes that with one possible exception the respondents did not establish the probability of the claimed violations. The exception is a TILA/CUTPA violation in that the movant's papers omitted statutorily-mandated explanations of certain terms.

transferred to the estate." The trustee asserts the mortgage loan transaction with the debtor was procedurally and substantively unconscionable and constituted conduct on the part of the movant sufficient to implicate the principle of equitable subordination. Without undertaking an examination into whether § 510(c) would otherwise be applicable,[4] the court concludes that under recent decisional Connecticut authority, no determination of unconscionability can be based on the record made in this proceeding.

The Connecticut test for unconscionability in real estate transactions is "whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80, 89, 612 A.2d 1130 (1992). In making this determination, the court, on a case-by-case basis, is to take into account all the pertinent facts and circumstances. *Id.*

The trustee contends that the mortgage loan transaction procedurally and substantively was unconscionable because the terms were oppressive, Lebow's fee was excessive, the debtor, unsophisticated in financial matters and unrepresented at the closing, was not advised of all of the loan terms prior to the closing, and the movant should have known of the debtor's inability to repay the debt. The trustee asserts the loan transaction was "nothing more than an equity-skimming scheme." *Respondents Joint Brief* at 3

Comparable arguments were made in *Cheshire, supra,* where, in a mortgage foreclosure action, the defendants argued, in relevant part, that because they were lacking in business acumen, unrepresented

at the closing, and that the creditor should have known of their inability to meet the mortgage payments, the loan was unconscionable. The *Cheshire* court held that inasmuch as the defendants had been through a closing before, the creditor's attorney had explained to the defendants their right of representation and the contents of all of the documents, and since the defendants were able initially to make the mortgage payments, such circumstances did not constitute unconscionability. *Id.* at 90–93, 612 A.2d 1130.

As in *Cheshire,* the debtor here had participated in a previous loan transaction and was advised by the movant's attorney at the closing of the right to representation as well as of the contents of the mortgage documents.[5] The debtor was also able, after the closing, to make her mortgage payments for a year and a half. The trustee has not proven that the movant entered into this transaction with the sole intent of foreclosing on the property. The debtor generally understood what was going on, requested that the mortgage be increased to provide her with additional cash, and had the monthly payments tailored to her requirements. The court cannot conclude that the mortgage documents prepared by the movant were so one-sided as to be unconscionable as a matter of law. *Cf. Hamm v. Taylor* 180 Conn 491, 495–96, 429 A.2d 946 (1980) (Whether interest rate unconscionable includes financial circumstances of borrower and income-producing capacity of mortgaged property).

## IV.

## CONCLUSION

The parties have stipulated that the value of the property is less than the amount of the debt found by the state-court judgment. The movant has thereby established cause for relief from stay. *See* Code

---

**4.** To establish equitable subordination, the following three conditions have to be satisfied: (1) the claimant must have been engaged in some type of inequitable conduct; (2) the misconduct resulted in injuries to the debtor's creditors or conferred an unfair advantage on the claimant; (3) equitable subordination would not be incon-

sistent with the Bankruptcy Code. *See In re Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1977).

**5.** The court credits the testimony of Attorney Costanzo on how the loan closing was conducted.

§ 362(d)(2). The motion for relief from stay must be, and hereby is, granted. It is

SO ORDERED.