In re Wallace LeRoy GREEN, Debtor.

In re Kenneth Lysle GREEN and Jeanne JoAnn Green, Debtors.

In re Forrest Lynn GREEN and Hazel Arlene Green, Debtors.

In re AGRI–TECH FARMS, a Partnership, Debtors.

Bankruptcy Nos. 94–81026, 94–81027, 94–81028 and 94–81029.

United States Bankruptcy Court, C.D. Illinois.

April 13, 1995.

Barash & Stoerzbach, Galesburg, IL, for debtors.

Robert Lindstrom, Mustain Lindstrom & Henson, Galesburg, IL, for AgriBank, FCB.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court in each of these cases is the Motion to Allow Claim filed by AgriBank, FCB (BANK) and the Debtors' objection. Agri–Tech Farms is a partnership consisting of Wallace LeRoy Green, Kenneth L. Green, and Forrest L. Green. The partnership and all three partners filed separate Chapter 11 cases in bankruptcy.

In October of 1981, Agri–Tech Farms' predecessor (WGFK Farming Enterprises (WGFK)) gave the BANK's predecessor (Federal Land Bank of St. Louis) a real estate mortgage on nine tracts of land. WGFK sold one of the tracts of land to Steffan Farms pursuant to a contract for deed. Soon thereafter, the mortgage transaction was restructured into one transaction for eight tracts of land, and one for the other tract of land, with the partnership and the individual partners being contingently liable if Steffan Farms failed to pay the BANK.

The mortgage on the eight tracts of land went into default and in 1986, a state court foreclosure action was commenced and a settlement reached. Subsequently, Steffan Farms defaulted and in May of 1989, another state court foreclosure action was commenced as to the one tract of land. In the foreclosure the Debtors raised a variety of defenses which the state court denied. On April 15, 1994, the state court entered a judgment of foreclosure finding there was due from Steffan Farms the sum of $567,-423.83 and from the Debtors the sum of $551,578.26 and that the Debtors were liable for any deficiency.

On May 13, 1994, the Debtors filed their Chapter 11 cases. The notice to creditors set September 26, 1994, as the deadline for filing proofs of claim and indicated a claim need be filed only if a creditor was scheduled as "disputed, contingent, or unliquidated." The claims of the BANK were scheduled so as to fall within that classification. The BANK did not file a claim in any of the cases by the September 26, 1994 deadline. On August 3, 1994, the automatic stay was lifted to permit the BANK to go forward with the foreclosure sale in state court. The sale was completed and on October 27, 1994, the state court approved the report of sale and set the deficiency at $376,280.39. On January 3, 1995, the BANK filed its motions to allow claim.

In summary, the BANK has two alternative reasons why its claims should now be allowed. The first is that as the Debtors never filed a motion for an order directing the filing of claims, the BANK had until the approval of the disclosure statement to file its claims. The Debtors respond that the notice to creditors set a deadline for the filing of claims, the BANK didn't file any claims or get an extension of time to do so pursuant to Bankruptcy Rule 9006, and § 502(b) of the Bankruptcy Code, 11 U.S.C. § 502(b), bars late filed claims. The BANK counters by citing § 501 of the Bankruptcy Code, 11 U.S.C. § 501, § 502 of the Bankruptcy Code, and *In re Hausladen*, 146 B.R.

557 (Bankr.D.Minn.1992), and argues lateness is not a ground for disallowing a claim. The Debtors counter that argument by arguing *Hausladen* is not the law in the Seventh Circuit Court of Appeals. The BANK's final response is that the notice to creditors was not an order of the bankruptcy court, but a notice sent out by the bankruptcy clerk which did not contain a conspicuous notice concerning the need to file a claim.

The BANK's alternative reason is that excusable neglect exists under Bankruptcy Rule 9006(b)(1). The Debtors' response is that there was no excusable neglect as the BANK consciously elected to wait to file its claims, the Debtors will be prejudiced because of adverse tax consequences arising out of paying the deficiency, and the Debtors' plans of reorganization would have to be amended, resulting in delay of the reorganization process.

The Debtors also object to the allowance of the claims on the grounds that for a variety of reasons based on state law they are not liable for the deficiency.

The filing and allowance of a proof of claim is governed by the following sections of the Bankruptcy Code and Bankruptcy Rules. Section 501 of the Bankruptcy Code governs the filing of a proof of claim, the pertinent part of which reads in part as follows:

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

In a Chapter 11 case, § 1111(a) of the Bankruptcy Code, 11 U.S.C. § 1111(a), also impacts the filing of a proof of claim. It provides as follows:

(a) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

In a Chapter 11 case, Bankruptcy Rule 3003 fills in the details omitted from § 501. In subsections (c)(2) and (3) it provides as follows:

(2) *Who must file.* Any creditor or equity security holder whose claim or inter-est is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) *Time for filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

Relief from the time requirements of Bankruptcy Rule 3003 are found in the "cause shown" provisions of Bankruptcy Rule 3003(c)(3), and the time enlargement provisions of Bankruptcy Rule 9006(b)(1) which provides as follows:

(b) *Enlargement.*

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Section 502 of the Bankruptcy Code governs allowance of claims. It provides in part as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in

lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that.... [1]

■ Turning to the BANK's first reason, the BANK's reading of § 501 and § 502 is incorrect and its reliance on *Hausladen* is misplaced. The correct interpretation of § 501 and § 502 is found in *In re Chavis*, 47 F.3d 818 (6th Cir.1995), where the court found that § 501 and Bankruptcy Rule 3002 sets forth a timeliness requirement and § 502 presupposes compliance with § 501 and that compliance with Bankruptcy Rule 3002 is a prerequisite to allowance under § 502, stating:

> Notwithstanding the Second and Ninth Circuits' decisions (in *In re Vecchio*, 20 F.3d 555 (2nd Cir.1994) and *In re Pacific Atlantic Trading*, 33 F.3d 1064 (9th Cir. 1994), respectively), we believe that the Bankruptcy Code and Rules can be harmonized: § 501 creates the substantive right to file a claim and identifies the parties holding that right; § 502 states that a claim filed in accordance with § 501, is allowed unless a party in interest objects; § 501 contemplates a timeliness requirement; Rule 3002 designates when a claim is timely filed (i.e., § 501 incorporates Rule 3002); and because § 501 incorporates Rule 3002, and because § 502 presupposes compliance with § 501, compliance with Rule 3002 (i.e., timeliness) is a prerequisite to § 502 allowance. The Bankruptcy Code's legislative history supports this result. Indeed, Congress anticipated that the Rules of Bankruptcy Procedure would set the time limits, the form, and the procedure for filing claims.

In the cases before this Court, as the BANK failed to timely file under § 501, § 1111(a) and Bankruptcy Rule 3003, its claims cannot be allowed under § 502, unless there is some other Bankruptcy Code provision or Bankruptcy Rule that saves the filings, which brings this Court to the BANK's argument that the notice it received was defective.

■ This argument fails for two reasons. First, the notice to creditors, although not identical to Bankruptcy Official Form 9, substantially conforms to it. Just as in Official Form 9, it is designed to be signed by the bankruptcy clerk, and was sent out "for the Court" as part of the Court's procedures for notifying creditors. Second, the part of the notice dealing with the need to file a proof of claim need not be conspicuous.

*Collier's on Bankruptcy* discusses the difficulties resulting from the kind of notice given to creditors whose claims are listed as disputed, contingent or unliquidated, stating:

> If a claim is scheduled as disputed, contingent, or unliquidated, specific notice of such fact should be given to the holder of the claim or interest. As noted by the Ninth Circuit Appellate Panel:

>> [W]here a debtor questions the quality of a claim thereby placing the creditor in a position of potential default and loss, due process would call for specific notice to the creditor. Filing of schedules at a place frequently far removed from the location of the creditor, as a practical matter, is not an optimal method of providing the creditor with an opportunity to learn that there is a dispute or question concerning his claim. Thus, it is questionable as to whether there has been sufficient notice to the creditor as to the facts and basis of the dispute.

> Although notice of the fact that a claim is scheduled as disputed, contingent or unliquidated is not required by either the Bankruptcy Code or Rules, local rules may impose a notice requirement and should be

---

1. None of the stated exceptions are applicable in the case before this Court. The Debtors rely on § 502(b)(9), which was added by The Bankruptcy Reform Act of 1994, to overrule *Hausladen* and which provides:

   (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

   Section 502(b)(9) became effective on October 22, 1994 and is not applicable to the cases before this Court.

consulted. In the absence of any local rule, the burden generally is on the creditor to learn how its claim is scheduled in order to determine the necessity for filing a proof of claim. That information is available from the filed schedules located in the office of the bankruptcy clerk.

5 *Collier on Bankruptcy*, ¶ 1111.01[3] at p. 1111–7. The Advisory Committee Notes to Bankruptcy Rule 3003(c) echo that concern as they provide:

> *Subdivision (c)*. This subdivision permits, in paragraph (1), the filing of a proof of claim but does not make it mandatory. Paragraph (2) requires, as does the Code, filing when a claim is scheduled as disputed, contingent, or unliquidated as to amount. It is the creditor's responsibility to determine if the claim is accurately listed. Notice of the provision of this rule is provided for in Official Form No. 16, the order for the meeting of creditors. In an appropriate case the court may order creditors whose claims are scheduled as disputed, contingent, or unliquidated be notified of that fact but the procedure is left to the discretion of the court.

In *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the "Notice for Meeting of Creditors," provided:

> "You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. *See* 11 U.S.C.Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989."

In discussing the adequacy of the notice, the Supreme Court stated:

> In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. *See In re Pioneer Inv. Services*

*Co.*, 943 F.2d 673, 678 (6th Cir.1991). We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. *Ibid.* This is not to say, of course, that respondent's counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

The Court of Appeals, in *Pioneer*, distinguished the notice in that case from the Official Bankruptcy Form:

> We also find it significant that the notice containing the bar date was incorporated in a document entitled "Notice for Meeting of Creditors." Such a designation would not have put those without extensive experience in bankruptcy on notice that the date appended to the end of this notice was intended to be the final date for filing proof of claims. Official Bankruptcy Form 16 provides a model for notifying creditors of a proof of claims deadline in a Chapter 11 bankruptcy:

> > The debtor [or trustee] has filed or will file a list of creditors and equity security holders pursuant to Rule 1007. Any creditor holding a listed claim which is not listed as disputed, contingent or unliquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before [Insert Date], which date is hereby fixed as the last day for filing a proof of claim[.]

(emphasis added). While we do not suggest that the court was obligated to notify creditors in precisely this form, the comparison between this Form 16 notice and the notice actually given in this case suggest the dramatic ambiguity of the latter. This ambiguity is exacerbated by the fact that the notice was simply and inconspicuously labeled "Bar date" without any reference to its significance as a deadline for the filing of proof of claims. Even persons experienced in bankruptcy might confuse such a label for other deadlines. For example, the term "bar date" is also used to describe the deadline for filing objections to a debtor's discharge under Rule 4007(c).

*In re Pioneer Inv. Services Co.,* 943 F.2d 673, 678 (6th Cir.1991).

In the case before this Court, the notice sent to the BANK substantially conforms to Bankruptcy Official Form # 9 [2] and meets the standard set out by the Circuit Court of Appeals in *Pioneer.* Contrary to the facts in *Pioneer,* the notice was not "unusual" and comparing it to the Official Form reveals no "dramatic ambiguity." Having met the standard set out in *Pioneer,* the BANK had the burden of learning how its claims were scheduled and taking steps to file its claims, if necessary. This is not an undue burden as both the BANK and its attorney are experienced in dealing with bankruptcy matters in this Court.

■ The BANK's alternative reason for allowing the claims is excusable neglect. Put quite simply, excusable neglect is not available to the BANK as it requires inadvertence, mistake, carelessness, or intervening circumstances beyond the BANK's control, which is not present in this case. In *Pioneer,* the Supreme Court stated:

> The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for out purposes, "to leave undone or unattended to *esp[ecially] through carelessness." Webster's Ninth New Collegiate Dictionary* 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to

act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." (Citation). Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

The BANK's action was voluntarily and knowingly taken. It made a conscious effort to delay the filing of its claims until after the foreclosure sale and the claim date had run. A deliberate decision not to file a proof of claim does not constitute "excusable neglect." *In re Dauer,* 165 B.R. 146 (Bkrtcy.D.N.J. 1994); *In re New York Seven–Up Bottling Co., Inc.,* 153 B.R. 21 (Bkrtcy.S.D.N.Y.1993).

■ The other provision offering relief from the filing deadline that needs to be considered is the "for cause shown" provision found in Bankruptcy Rule 3003(c)(3). A number of courts have held that the "for cause shown" standard explicitly provided for in Rule 3003(c)(3) is not equivalent to the analysis of "excusable neglect" under Rule 9006(b). *In re Pettibone Corp.,* 110 B.R. 837 (Bkrtcy.N.D.Ill.1990); *In re Somar Concrete, Inc.,* 102 B.R. 44 (Bkrtcy.D.Md.1989). The courts have accorded a narrower construction to the phrase "excusable neglect" than the "for cause shown" standard, refusing consideration of factors such as prejudice to the debtor or the effect upon other creditors. *In re Somar Concrete, Inc., supra.* Given the Supreme Court's ruling in *Pioneer,* expanding the scope of "excusable neglect" under Rule 9006(b), that distinction may have narrowed. However, the Supreme Court's decision in *Pioneer* is limited to an analysis under Rule 9006(b), and does not preclude an examination of the extension of time for filing a proof of claim "for cause shown" under

---

**2.** The Official Forms were substantially amended in 1991, and the initial notice to creditors was redesigned. Presently, nine variations of the form, created for each chapter and various types of debtors, are designated 9A through 9I. These forms replaced Official Form 16.

Rule 3003. That determination depends on the facts and circumstances in each case and among the factors to be considered are the reason for the delay; the length of the delay; whether the debtor was prejudiced by the delay; the debtor's knowledge of the claim; and the good faith of the creditor. *In re Pettibone Corp., supra.*

█ Chief consideration in this case must be given to the Debtors' classification of the BANK's claims as "disputed," for that is what necessitated the filing of a claim in the first place. The BANK contends that, at the time the bankruptcy was filed, its claims against the Debtors, having been reduced to judgment in the state court foreclosure proceeding on April 15, 1994, were no longer subject to dispute. In response, the Debtors argue that while the judgment of foreclosure was a final and appealable order, the time for appealing the foreclosure judgment had not expired at the time the petitions were filed and, by reason of the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. § 362, the foreclosure judgment never attained the status of a final judgment.[3] The Debtors' argument fails for two reasons. First, § 362 is not applicable. Second, assuming, arguendo, that the Debtors' characterization of the state court judgment as final and appealable is correct, their assumption that it is inoperative in this Court is nevertheless incorrect.

█ The automatic stay of § 362 does not stay offensive actions taken by a debtor. *In re Merrick,* 175 B.R. 333 (9th Cir. BAP 1994). Section 108(b) of the Bankruptcy Code would apply. That section provides:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the

date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108(b). Addressing the applicability of this provision to the filing of a notice of appeal by a Chapter 11 debtor, the court in *Autoskill v. National Educational Support Systems,* 994 F.2d 1476, 1484 (10th Cir. 1993), stated:

Section 108(b) applies generally to fixed periods within which a debtor or trustee "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act." We agree with the courts holding that § 108(b)'s sweeping language "includes the filing of a notice of appeal" *Production Credit Ass'n v. Burk,* 427 N.W.2d 108, 110 (N.D.1988); *DiMaggio v. Blache,* 466 So.2d 489, 490–91 (La.Ct.App.1985). Although § 108(b) does not specifically refer to notices of appeal, the statute includes a broad catchall extending the time in which a debtor or trustee may "perform *any other similar act* " in addition to the steps listed. § 108(b) (emphasis added); *see In re G–N Partners,* 48 B.R. 462, 467 (Bankr.D.Minn. 1985) (that § 108(b) is "broader" than listed items "is obvious from its reading"). Filing a notice of appeal is at least a "similar act" with respect to two of the actions specified, filing a "pleading" or a "notice." Consequently § 108(b) gives a debtor in possession or a trustee an extended period for filing a notice of appeal of up to 60 days, as long as the 30–day time period of Rule 4(a) has not expired when the bankruptcy petition is filed.

In the case before this Court, the time for filing an appeal under state law would run from either 30 days from the date of the judgment of foreclosure entered on April 14,

---

**3.** The Debtors assume that the judgment of foreclosure entered April 15, 1994, was a final and appealable order, but assert that the time for filing an appeal had not expired when the petitions in bankruptcy were filed. The BANK contends that the Debtors are incorrect and that the final and appealable order was the order confirming the sale which was entered on October 27, 1994. In view of the result reached by this Court, it is not necessary to decide the issue.

1994, or the date of the order approving the sale entered on October 27, 1994. So the Debtors should have appealed the first order by the later of the end of the 30 day period or 60 days after the order for relief, July 12, 1994, and they didn't. If the appeal involved the second order, the Debtors should have appealed by the same standard, or November 26, 1994, and they didn't.

■ Even if this Court would follow those decisions which hold that an appeal by a debtor in an action originally brought against the debtor is subject to the automatic stay[4], the Debtors here, early on in the case, entered into a stipulated agreement with the BANK that the foreclosure action in state court could proceed. The agreed order lifting the stay provided that a deficiency judgment would not be entered by the state court in the event the Debtors were granted a discharge in this Court. That caveat is neither inconsistent with the BANK's assertion that it proceeded to liquidate the collateral to determine the amount of its unsecured claim for filing in this Court nor is it supportive of the Debtors' assertions that actions taken in the foreclosure proceeding after the bankruptcies were filed were of no consequence or effect to them.

The judgment of foreclosure entered by the state court rejecting the defenses the Debtors seek to raise here is a final judgment, though it may not have been immediately appealable. *Santana v. Zipperstein*, 142 Ill.App.3d 386, 491 N.E.2d 1231, 96 Ill. Dec. 771 (1st Dist.1986). Even if a foreclosure action is not completed at the time of the bankruptcy filing, the amount of the debt as determined by the state court will be *res judicata*. *Matter of Johnson*, 149 B.R. 284 (Bkrtcy.D.Conn.1993). If the Debtors in fact disputed their indebtedness to the BANK, their proper avenue of relief would have been to seek review from the Appellate Court of Illinois and not to collaterally attack the state court judgment in another forum. *See Booth v. Lemont Mfg. Corp.*, 440 F.2d 385 (7th Cir.1971). They took no such actions, and, by the time they filed their plan and disclo-

sure statement on November 29, 1994, the time for filing an appeal from the order confirming the sale had expired and the validity of the BANK's claims were no longer subject to dispute. By failing to appeal judgment of foreclosure, the doctrine of *res judicata* now applies to bar not only the issues which were actually decided, but all defenses which might have been presented in that litigation. *Cooper v. Suter*, 834 F.Supp. 282 (C.D.Ill.1993).

The objective of § 1111(a), which provides that a creditor need only file a claim if scheduled as disputed, contingent or unliquidated, is only accomplished if the debtor accurately completes the schedules, listing as disputed, contingent and unliquidated only those claims which are actually the subject of a dispute or are clearly contingent or unliquidated. 5 *Collier on Bankruptcy*, ¶ 1111.01[3] at p. 1111-6 (15th ed. 1994). Listing a claim as disputed on schedules filed with a bankruptcy petition must be based on a viable procedure to resolve the dispute and a subsequent utilization of that procedure to actually resolve the dispute, and not just that the claim, at the time of the filing of the petition, is disputable by reason of a not yet reviewable state court judgment. Had the Debtors scheduled the BANK's claims as disputed and perfected the appeal there would be a basis for concluding the BANK's claims were in fact being disputed. Their failure to perfect the appeal, along with their consent to the continuation of the state foreclosure action, leads to the conclusion the claims were no longer being disputed. The Debtors' mistaken belief they could contest their liability to the BANK as fixed by the state court, in this Court, cannot expiate the misclassification.

A debtor's improper classification of a claim in a Chapter 11 case may be considered in determining whether there is sufficient "cause" to extend the time for filing the claim under Rule 3003(c)(3). *In re Somar Concrete, Inc., supra; In re Prime Motor Inns, Inc.*, 144 B.R. 554 (Bkrtcy.S.D.Fla.1992); *In re American Skate Corp.*, 39 B.R. 953

---

**4.** *See Farley v. Henson*, 2 F.3d 273 (8th Cir.1993); *Ingersoll–Rand Financial Corp. v. Miller Min.*

Co., 817 F.2d 1424 (9th Cir.1987).

(Bkrtcy.D.N.H.1984). By so classifying a claim, the debtor subjects the creditor to the perils of the bar date and stands to reap a "windfall" if the creditor fails to file a claim. As the Supreme Court noted in *Pioneer*, the rules for filing claims in liquidation and reorganization cases differ because the goals of the two types of proceedings differ:

> Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.

507 U.S. at ——, 113 S.Ct. at 1495.

■ Considering all the circumstances in the present case, this Court finds that cause has been shown to permit the filing of the BANK's claims in these cases. The reason for the delay was the BANK was establishing the amount of the deficiency by completing the foreclosure sale. The BANK promptly moved for relief from the stay in order to liquidate the collateral and did not delay in filing its claims after the foreclosure sale. The Debtors' argument that the BANK could not have been surprised by the listing of their claims as "disputed" since the parties had been going at it "hammer and tongs" for five years, cuts both ways. It also shows the Debtors were well aware of the BANK's claims against them and that an adverse state court ruling on the merits had been made. Yet they took no steps to overturn that ruling by appealing to the state appellate court. Instead, they sought another bite of the apple in this Court. Furthermore, these cases are in their early stages and while the Debtors have filed plans of reorganization, no action has been taken with regard to those plans. The Debtors' claims of prejudice resulting from the adverse tax consequences that will result from allowance of the BANK's claims are not proper considerations here. It is only prejudice to the debtor that is caused by the delay in filing of a claim which factors into this determination. If the Debtors had engaged in extensive negotiations or litigation with other creditors resulting in confirmed plans prior to the BANK's filing of its claims, which if allowed, would destroy the Debtors' rehabilitation and deprive other creditors of the benefit of their bargains, the BANK's late filings would not be allowed by this Court. But the BANK neither caused nor contributed to the troublesome tax problem which now faces the Debtors. The Debtors would have encountered that predicament if the BANK had timely filed its claims. That the Debtors will have to go back to the drawing board and formulate new plans pales in comparison to the harm to be suffered by the BANK if its motions to allow claim are denied.

■ The Debtors also object to the allowance of the BANK's claims on the grounds that for a variety of reasons based on state law they are not liable for the deficiency. It would appear the reasons they raise in this Court are the same reasons raised and rejected in the second state court foreclosure proceeding. The doctrine of *res judicata* bars the Debtors from again raising issues that were raised, or could have been raised, in the state court foreclosure proceeding. However, the Debtors may have other defenses. Therefore, the appropriate procedure to follow in order to raise any defenses not barred by the doctrine of *res judicata* is to allow the BANK's motions to allow claim and to give the Debtors time to file any objections not barred by the doctrine of *res judicata.*

Finally, this Court needs to consider a procedural issue that arose after the BANK's motions were taken under advisement. The Debtors filed a motion to strike the BANK's supplemental memorandum. The first ground for the motion is that the supplemental memorandum was filed late. The BANK contends it was timely filed. This Court need not determine if it was late filed, because even if it were, that would not be grounds to strike it. No harm was done. The BANK's motions were under advisement and the late filing of the supplemental memorandum did not delay a consideration of the issues or a decision on them. The Debtors also contend questions of fact are raised by the supplemental memorandum. As the issues raised by the supplemental memorandum are resolved in the Debtors' favor without a factual hearing, there is no need to consider this argument.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED

1. The Motions to Allow Claim filed by AgriBank, FCB in these cases is hereby ALLOWED and the Objections filed by the Debtors are hereby DENIED;

2. The Debtors' Motions to Strike the Supplemental Memorandum filed by Agri-Bank are hereby DENIED and the Objections to the Motions to Strike filed by Agri-Bank are hereby ALLOWED;

3. The Debtors shall have twenty-one (21) days from the date of this Order to file any objections to those claims not barred by the doctrine of *res judicata*.