Cynthia A. BELL, Appellant,

v.

The ALDEN OWNERS, INC., Appellee.

No. 96 Civ. 2865 (RWS).

United States District Court,
S.D. New York.

Aug. 1, 1996.

Davis Polk & Wardwell (Ogden N. Lewis, of counsel), New York City, for Cynthia A. Bell.

Rosen & Slome (Adam L. Rosen, of counsel), Garden City, NY, for The Alden Owners, Inc.

## OPINION

SWEET, Senior District Judge.

Cynthia Bell ("Bell") appeals from a February 22, 1995 Order of the Honorable Stuart M. Bernstein, Judge of the Bankruptcy Court of the Southern District of New York (the "Order"), granting The Alden Owners Inc.'s ("Alden") motion for relief from the automatic stay of section 362 of the Title 11, United States Bankruptcy Code, to allow Alden to cancel Bell's share certificates and sell the shares with respect to Bell's apartment. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the Order will be affirmed.

### Parties

Prior to the filing of her Chapter 13 case, Appellant Bell was the owner of a co-op apartment, apartment 202A ("the Apartment") located at 225 Central Park West. Bell owns 277 shares of stock in Appellee Alden, a cooperative corporation under New York Cooperative Corporation Law, section 10, *et seq.*

### Background

#### The Proprietary Lease

Appellant occupied the Apartment from January 14, 1985 through November 13, 1995. On June 7, 1984, Appellant and Alden executed a lease (the "Lease"), which provided, in relevant part, that:

(a) Appellant would pay maintenance based on the number of shares allocated to the Apartment. (¶ 1(a) of Lease.)

(b) Appellant would not accumulate trash in the Apartment or bring trash into the public hallways of the building. (¶ 18 of Lease.)

(c) in the event Appellant breached the terms of the Lease, the Lease would terminate. (¶ 31 of Lease.)

(d) the Shares are appurtenant to the Lease and cannot be transferred independent from the Lease. (¶ 45 of Lease.)

(e) the Shares can be transferred only in connection with the simultaneous transfer of the Lease. (¶ 45 of Lease.)

(f) upon termination of the Lease, Appellant shall surrender to Alden the certificate for the Shares to which the Lease is appurtenant. (¶ 32(c) of Lease.)

(g) if the Appellant refuses to surrender the certificate for the Shares, Alden has the right to cancel the certificate and relet the Apartment by issuing a new share certificate to a new tenant. (¶ 32(c) of Lease.)

(h) upon the issuance of a new share certificate, Alden shall apply the proceeds received: first, to the repayment of the Appellant's indebtedness to Alden including attorneys' fees and costs; second, to the repayment of any mortgage on the Apartment; and third, if the proceeds are sufficient, Alden shall pay any surplus to Appellant. (¶ 32(c) of Lease.)

### The State Court Proceedings

On July 16, 1992, Alden brought a summary holdover proceeding against Appellant which alleged, *inter alia*, that Appellant had violated the Lease by failing to keep the interior of the Apartment in good repair, utilized the Apartment to store assorted items including boxes, papers, garbage and other debris, and permitted the debris to pile up in the Apartment.

Initially, a default judgment was entered against Appellant, but she thereafter appeared at the inquest and the matter was settled pursuant to a Stipulation of Settlement, dated October 6, 1992, wherein Appellant agreed to remove within thirty days the garbage and debris from the Apartment.

In December 1992, Alden filed a motion, returnable December 23, 1992, alleging that Appellant had failed to comply with the terms of the Stipulation of Settlement and requesting a final judgment of possession, the issuance of a warrant of eviction, and an order directing the determination of Alden's reasonable attorneys' fees.

A hearing took place before the State Court which concluded on March 30, 1993. After the hearing, the State Court rendered a decision and judgment by an order dated June 22, 1993 (the "State Court Judgment"). The State Court Judgment contains the following findings:

Upon the credible evidence presented at the hearing which concluded March 30, 1993, the Court finds the [Appellant] breached the terms of the Stipulation, failed to cure the conditions within thirty (30) days after the Stipulation and that such conditions continued to exist.

The State Court granted a final judgment in favor of Alden with the issuance of a warrant of eviction to be stayed for 10 days after service by Alden upon Bell.

On July 20, 1993, Alden served a copy of the judgment with notice of entry upon Bell. As a result, a warrant was issued and a seventy-two hour notice was served upon Bell.

On October 15, 1993, Bell submitted an order to show cause seeking an order permanently staying the execution of the warrant. She based this motion upon her claim that the default was cured within the ten-day period. The order to show cause was signed by the State Court and, on October 25, 1993, a hearing was held with respect to Bell's claim that she had cured the default. The hearing continued on November 16, 1993 and, at its conclusion, the State Court denied Bell's motion.

Bell appealed the State Court Judgment to the Appellate Term and in December 1994, the Appellate Term affirmed the State Court Judgment, stating:

The underlying holdover proceeding was settled pursuant to so-ordered stipulation wherein tenant agreed to remove, within thirty (30) days, accumulations of boxes, papers, garbage, and other debris from her studio apartment and the building's common areas. After the hearing, the Housing Court determined that the tenant had breached the terms of the stipulation and afforded her a final opportunity to cure the conditions complained of within ten days. Following a second hearing, the court rejected tenant's testimony as "incredible", and concluded that there had been no cure or attempt to cure during the cure period. Based upon the testimony at the last hearing and the photographs received in evidence, the court could fairly find that the condition of excessive rubbish and debris in the premises continued to exist, and that no correction had taken place since the execution of the stipulation. While the court was sympathetic to tenant's position, it properly balanced the interests of the other tenants and the cooperative corporation in declining to grant a further stay of the warrant (*Stratton Cooperative, Inc. v.*

*Fener,* 211 A.D.2d 559, 621 N.Y.S.2d 77 [1st Dept.], N.Y.L.J., Jan. 26, 1995, p. 27 c. 4).

On July 28, 1995, the Appellate Term affirmed the State Court Judgment and denied Appellant's motion for an interim stay of the warrant of eviction. On August 24, 1995, Alden served notice of entry of that order on Appellant.

On August 28, 1995, Appellant filed a motion for reargument, leave to appeal, and an interim stay before the Appellate Term. That motion was denied in all respects on October 11, 1995 by order entered on October 13, 1995. On October 20, 1995 Alden served the notice of entry of that order on Appellant.

On November 8, 1995, Appellant filed a Summary Statement in the Appellate Division. In the Summary Statement form, Bell stated her application was for "stay of the warrant of eviction and the leave to appeal." On the same day, Mr. Goldberg and Bell appeared in the Appellate Division in the Chambers of Justice Rosenberger to argue Bell's application for an interim stay pending her motion for leave to appeal to the Appellate Division. Justice Rosenberger denied Bell's application for an interim stay and wrote in the "Disposition" portion of the form: "Interim stay denied." [1]

Justice Rosenberger did not consider Bell's request for leave to appeal on the Summary Statement, because Bell had not filed a motion for leave to appeal, as required by New York rules of procedure. N.Y. CPLR 5513(b). The bottom of page two of the Summary Statement form has a space to indicate a motion date where a motion is filed. It is blank.

After Justice Rosenberger refused to grant the interim stay, the Appellate Division Clerk who was assisting Bell asked Bell if she wished to obtain a return date for her motion. Bell, in Goldberg's presence, told the Clerk that she did not wish to proceed with her motion because she had not obtained a stay.

Bell did not serve Goldberg's office with any papers relating to the motion for leave to appeal and never filed motion papers in the Appellate Division.[2]

An eviction date was initially scheduled for November 9, 1995, then rescheduled for November 13, 1995.

### The Bankruptcy Court Proceedings

Bell filed her Chapter 13 case minutes after the eviction began on November 13, 1995, but Alden did not receive actual notice of the bankruptcy filing until approximately 10:00 a.m. on November 13 after the eviction had been completed.

On November 13, 1995, Appellant filed an order to show cause in the Bankruptcy Court seeking to hold Alden in contempt of court for violation of the automatic stay and for an order invalidating the eviction. After an evidentiary hearing, the Bankruptcy Court found that any violation of the automatic stay was innocent and not willful. The Bankruptcy Court signed an order (the "Eviction Order") on November 30, 1995 providing for maintenance of the status quo until it could consider Alden's motion to modify the automatic stay with respect to the eviction and permitting Bell an opportunity to remove her personal property from the Apartment.

On November 21, 1995, Alden filed a motion seeking an order annulling the automatic stay to validate the eviction. On November 22, 1995, Bell filed a motion requesting modification of the Bankruptcy Court's Eviction Order in order to give her more time to enter and pack the Apartment. After adjourning the hearing on Alden's motion at Bell's request and holding a hearing on December 19, 1995, the Bankruptcy Court, on December 29, 1995, issued a Memorandum Decision

---

1. The facts regarding the events in state court on November 8, 1995 are derived from an affidavit sworn to by Goldberg and submitted to this Court by Alden in opposition to the instant appeal.

2. On May 17, 1996, Adam L. Rosen, counsel to Alden in this appeal, called the Appellate Division and spoke with Robert Moyna ("Moyna") of the Motion Clerk's office. Moyna checked the Appellate Division's records and confirmed that there is no record of any motion by Bell, at any time, for leave to appeal to the Appellate Division, and that there is no pending motion by Bell in the Appellate Division.

Granting Motion for Relief from the Automatic Stay. That decision annulled the automatic stay to validate Alden's eviction of Bell from the Apartment, and, after deeming it to be a motion for reargument, denied Bell's motion requesting modification of the Eviction Order.

On November 27, 1995, Bell submitted a second order to show cause to the Bankruptcy Court in support of her motion to amend the Bankruptcy Court's Eviction Order. The order to show cause was not signed and was resolved by conference calls held on February 16 and February 20, 1996 between the parties and the Bankruptcy Court. The agreement reached provided, *inter alia,* that Bell would have two additional days to move her personal property.

On January 18, 1996, Alden filed a motion to modify the automatic stay so as to permit cancellation of the Share certificates and sale of the Appellant's Shares in the cooperative corporation. On January 25, 1996, Appellant filed a third application to amend the Eviction Order, which was denied.

On January 26, 1996, Bell filed a letter with the Bankruptcy Court requesting that Judge Bernstein recuse himself from the case based on his alleged bias regarding the November 13, 1995 hearing. After a hearing on January 30, 1996, the Bankruptcy Court granted Alden's motion to modify the stay, denied Bell's recusal motion, and entered the February 22 Order which is the subject of this appeal. On February 6, 1996, Appellant filed a Notice of Appeal and Designation of Record, which was originally filed on January 8, 1996 in this Court. On February 15, 1996, Bell filed a third application requesting modification of the Bankruptcy Court's Eviction Order, which was denied.

On or about February 21, 1996, pursuant to the Bankruptcy Court's Eviction Order, Alden moved and stored Bell's personal property left behind in the Apartment at her expense and confirmed this by letter to Bell and the Bankruptcy Court. Appellant was thereafter informed that it would be her responsibility, pursuant to the Bankruptcy Court's Eviction Order, to pay future storage expenses and insurance for her property.

On February 21, 1996, Bell filed a fourth application to amend the Eviction Order, which was denied. Bell filed a notice of appeal from the February 22, 1995 Order on February 26, 1996, claiming that the Bankruptcy Court abused its discretion by granting Alden's motion to modify the automatic stay. On or about February 27, 1996, Appellant filed a motion for stay pending appeal before the Bankruptcy Court. On or about February 28, 1996, Appellant submitted an order to show cause to the Honorable John E. Sprizzo of this Court seeking a stay pending appeal to this Court. Judge Sprizzo did not sign the order but directed Alden to appear at a conference on February 29, 1996, after which he declined to take any action in light of the pending motion for a stay pending appeal before the Bankruptcy Court.

On or about March 13, 1996, Alden filed a proof of claim in Bell's Chapter 13 case on account of its secured, unliquidated claim for amounts owed pursuant to the Lease. On April 19, 1996, this Court (Cedarbaum, J.) issued a temporary restraining order against Alden prohibiting the sale of the Apartment. On April 22, 1996, this Court (Sweet, J.) continued the temporary restraining order pending this appeal subject to the posting of a $10,000.00 bond.

Bell moved for a stay. Oral argument on Bell's motion was heard on May 15, 1996, at which time the appeal was considered fully submitted. Bell's request to extend the temporary restraining order prohibiting sale of her shares was denied.

### Discussion

#### I. *Standard of Review*

 Under Federal Rule of Bankruptcy Procedure 8013, this court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard and reviews its conclusions of law *de novo.* Fed.R.Bankr.P. 8013; *see In re Lomas Fin. Corp.,* 117 Bankr. 64, 66 (S.D.N.Y.1990); *In re Costa & Head Land Co.,* 68 Bankr. 296, 298 (N.D.Ala. 1986). Under the clearly erroneous standard, the court will reverse if " 'left with the definite and firm conviction that a mistake has been committed.' " *In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1388 (2d

Cir.1990) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), *quoted in Lomas,* 117 Bankr. at 66. Based on the record, the criterion for reversal has not been met.

## II. *The Bankruptcy Court's Decision Was Correct*

The Bankruptcy Court concluded that under Bankruptcy Code section 362(d) and the proprietary Lease, proper grounds had been established justifying modification of the automatic stay to permit Alden to cancel and sell the Debtor's Shares because: (i) the Lease had been terminated pre-petition; (ii) Bell had been legally evicted and had lost her right to live in the Apartment; (iii) the decisions of the State Court and Appellate Term could not be collaterally attacked in the Bankruptcy Court; (iv) Bell could not assume the Lease under Bankruptcy Code section 365; and (v) Bell could not transfer the Shares without the Lease.

As set forth below, the Bankruptcy Court's February 22 Order represents the proper application of the facts to law which is well-settled in this Circuit. Bell has failed to demonstrate any error in the Bankruptcy Court's legal conclusions.

### A. *The February 22 Order is Supported By Law in This Circuit*

#### 1. *The Lease was Terminated*

■ Under New York law, the issuance of a warrant of eviction cancels the lease between the parties and annuls the relationship of landlord and tenant. *See* N.Y. RPAPL § 749(3).[3] *In re Sanshoe Worldwide Corp.,* 139 B.R. 585, 594 (S.D.N.Y.1992), *aff'd* 993 F.2d 300 (2d Cir.1993); *Radol v. Centeno,* 165 Misc.2d 448, 627 N.Y.S.2d 887 (N.Y.Civil Ct.1995). The filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have power to resurrect a lease which was terminated prior to the filing of the lessee's bankruptcy

petition. *In re Darwin,* 22 B.R. 259 (Bankr. E.D.N.Y.1982). Furthermore, a state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court. *Manhattan King David Restaurant, Inc. v. Levine,* 163 B.R. 36 (S.D.N.Y.1993); *Kelleran v. Andrijevic,* 825 F.2d 692, 694–95 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

■ Here, the issuance of the warrant of eviction by the State Court terminated the Appellant's Lease and the landlord-tenant relationship between Alden and Bell. Bell's attempts to obtain an order vacating the warrant and resurrecting the Lease were rejected on appeal to the Appellate Term.

Bell's Chapter 13 filing neither resurrected the Lease nor empowered the Bankruptcy Court to reconsider the propriety of the determinations of the State Court or Appellate Term. On the contrary, the Bankruptcy Court was bound by those determinations, pursuant to which Bell no longer had an interest in the Lease and no longer had the right to control the disposition of her Shares. Bell has no interest which could be protected by the automatic stay. Therefore, cause existed for relief from the stay under Bankruptcy Code section 362(d)(1), which provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C. § 362(d).

■ Based upon the above analysis, the Bankruptcy Court properly concluded that cause existed under section 362(d)(1) to modify the automatic stay to permit Alden to

---

3. New York Real Property Actions and Proceedings Law section 749(3) provides, in pertinent part: "[t]he issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate the warrant for good cause shown prior to the execution thereof."

cancel and sell the Shares. The following excerpts from the Bankruptcy Court's February 13 Memorandum Decision highlight the legal and factual basis for granting Alden's motion:

> The form of cooperative ownership involved in this case is sui generis. An owner like the debtor receives shares in a corporation that owns the real property, and also becomes a lessee under a proprietary lease with the corporation. The lease and shares are inseparable. *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d 514, 517 (2d Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990); *see New York State Tax Comm'n v. Shor*, 43 N.Y.2d 151, 154, 371 N.E.2d 523, 524, 400 N.Y.S.2d 805, 806 (1977). The shares are not freely transferable, and have no value independent of the lease. *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d at 517. The proprietary lease in this case mirrors these unique characteristics of cooperative ownership. The shares and lease can only be transferred as an entirety (¶ 45(a)), and Alden can terminate the lease if the tenant ceases to own the shares. (¶ 31(a).)

> Under these circumstances, cause exists to modify the automatic stay. 11 U.S.C. § 362(d)(1). Bell has been evicted and her proprietary lease has been terminated. She has no right to live in the Apartment. Further, she has no proprietary lease to transfer, and cannot sell her shares without transferring the accompanying lease. Only Alden can transfer both to a purchaser as an entirety.

The Bankruptcy Court properly lifted the automatic stay to permit the cancellation and sale of the Bell's Shares, in short, because Bell no longer retained any interest entitled to the protection of the automatic stay. Bell forfeited any legal right to possess the Apartment upon the issuance of the warrant of eviction, and also forfeited any equitable interest arising from her de facto possession of the Apartment once she was lawfully evicted. Finally, Bell forfeited the right to control the disposition of her Shares when she lost the right to transfer the Lease.

### 2. *No Appeal is Pending in State Court*

#### a. *Bell Did Not File a Motion For Leave to Appeal*

■ After losing her appeal before the Appellate Term, Appellant drafted two documents: the Summary Statement and a written motion for leave to appeal. Appellant filed the Summary Statement with the Court. However, after Justice Rosenberger of the Appellate Division denied her request for an interim stay on November 8, 1995, Bell elected not to file her motion for leave to appeal and not to otherwise prosecute her appeal. Instead, Bell sought a stay of the eviction by filing a Chapter 13 bankruptcy case five days later, on November 13, 1995.

■ The filing of the Summary Statement alone is insufficient to constitute such a motion, as Appellant was aware. New York State law requires an appellant to file and serve a motion in order to obtain permission to appeal. Indeed, Bell was apparently aware of this requirement, based not only on information she received from the Clerk in the Appellate Division, but also on her own experience in filing and serving a written motion for leave to appeal in the Appellate Term.

As set forth in detail above, there is no pending motion before the Appellate Division, and Bell never filed or pursued her motion for leave to appeal. Thus, the Bankruptcy Court was entirely correct in concluding that the State Court Judgment was final in all respects.

#### b. *The Bankruptcy Code Provides a 60–day Extension of Time to Seek Leave To Appeal*

#### i. *The Limited Extension of Section 108(b) Governs this Case*

■ When Bell filed her Chapter 13 case on November 13, 1995, her time to file a motion in the Appellate Division for leave to appeal was extended sixty days, from November 13, 1995 to January 13, 1996. 11 U.S.C. § 108(b). Section 108(b) states:

> (b) Except as provided in subsection (a) of this section, if applicable non-bankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period

within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief. (emphasis added)

11 U.S.C. § 108(b). Section 108(b) applies generally to fixed periods within which a debtor or trustee "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act." *In re Green,* 180 B.R. 514, 520 (Bankr. C.D.Ill.1995); *Autoskill Inc. v. Nat. Educational Support Systems, Inc.,* 994 F.2d 1476, 1484 (10th Cir.1993). Courts have held that "§ 108(b)'s sweeping language includes the filing of a notice of appeal." *In re Green,* 180 B.R. at 520 (*citing Production Credit Ass'n of Minot v. Burk,* 427 N.W.2d 108, 110 (N.D.1988); *Di Maggio v. Blache,* 466 So.2d 489, 490–91 (La.Ct.App.1985)).

The sixty-day extension mandated by section 108(b) has been broadly applied by courts deciding whether an appeal had been brought on a timely basis. *See, e.g., Autoskill Inc.,* 994 F.2d 1476 at 1483–6 (10th Cir. 1993) *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993) (denying a motion to dismiss appeal and holding that section 108(b) extended debtor's time to file notice of appeal and that filing notice of appeal would not violate the automatic stay of section 362(a)); *In re Green,* 180 B.R. 514 (holding that the time for filing a notice of appeal, as extended by 11 U.S.C. § 108(b), had expired, and that res judicata applied as a result of the failure to timely appeal a judgment of foreclosure).

■ There is no practical difference between the requirements for filing a notice of appeal and for filing a motion for leave to appeal because both must be taken to initiate an appeal. Notice of entry of the Appellate

Term decision affirming the State Court was served on Bell on October 20, 1995. Therefore, her time to appeal pursuant to N.Y. CPLR § 5513(b) was set to expire on November 19, 1995.

When Bell filed her Chapter 13 case on November 13, 1995, section 108(b) extended Bell's time to appeal for sixty days and that time period expired on January 13, 1996. Consequently, the State Court Judgment is plainly not subject to further review.

### ii. *Appellant's Time to Appeal Is Not Governed By Section 362*

■ Bell contends that under *Koolik v. Markowitz,* 40 F.3d 567 (2d Cir.1994), the automatic stay of Bankruptcy Code section 362 indefinitely stayed the thirty day time period of CPLR 5513(b). *Koolik* concerned a debtor's pending appeal of a judgment rendered against it by way of counterclaim. The debtor appealed and Markowitz moved to dismiss the appeal on the ground that the notice of appeal was not timely. The debtor argued that further proceedings with respect to the motion to dismiss were stayed by section 362. *Id.* at 568. The Second Circuit held that the term "action or proceeding" as used in section 362(a)(1) included a counterclaim asserted against an original plaintiff, such as the debtor, and that the automatic stay barred continuation of the motion to dismiss the pending appeal from the money judgment rendered against the debtor. *Id.* at 568.

*Koolik* is distinguishable from the instant case. First, *Koolik* involved a pending appeal by a debtor and a pending motion to dismiss against a debtor where application of the automatic stay protected the debtor from having to defend a claim. In the instant case, section 362(a)(1) does not apply because there was neither an appeal nor any other "action or proceeding" pending before the Appellate Division when Bell filed her Chapter 13 case. The only thing "pending" at the time of Appellant's bankruptcy filing was the time period within which Bell could file her motion for leave to appeal, an act subject to section 108(b), as discussed above. *Koolik* did not involve the application of section 108(b).

■ Second, Section 362(a) of the Bankruptcy Code imposes an automatic stay which prohibits "the commencement or continuation ... of a judicial ... action or proceeding against the debtor," the "enforcement" of a judgment obtained prior to bankruptcy, or any other "act" to obtain possession of property of the estate or to create, perfect, or enforce any lien against property of the estate. Section 362(a) does not, however, toll or stay the running of statutory time periods. *Production Credit,* 427 N.W.2d at 110 (citing *Johnson v. First Nat. Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983) *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984)). Instead, 11 U.S.C. § 108 addresses the running of statutory time periods. *Production Credit,* 427 N.W.2d at 110.

Third, Appellant's argument that section 362(a) extends Appellant's time to file a motion for leave to appeal until the end of her Chapter 13 case—which could be several years—would lead to an extreme result that would effectively override the clear language of section 108(b).[4]

The Second Circuit considered the interplay between sections 108 and 362 in *Morton v. Nat. Bank of New York City,* 866 F.2d 561 (2d Cir.1989), and held that the automatic stay of section 362 did not apply to relieve a judgment creditor of the requirement under New York law that it extend the effectiveness of its statutory lien. *Morton,* 866 F.2d at 563–64. Instead, the Second Circuit held that the tolling provisions of section 108(c) applied to New York's ten-year period governing judgment liens on real property.[5] *Morton,* 866 F.2d at 566.

Several courts have likewise concluded that section 108(b), not section 362(a), applies where an appeal is not pending at the time a bankruptcy case is commenced and the time fixed under non-bankruptcy law to file a notice of appeal is set to expire after commencement of the case. For example, in *Autoskill v. Nat. Educational Support Systems, Inc., supra,* the Tenth Circuit held that (a) a debtor-defendant in a copyright infringement action was entitled to the benefits of section 108(b) in filing a notice of appeal from a preliminary injunction granted to plaintiff, (b) the sixty (60) day extension granted by section 108(b) was available to the debtor when the thirty (30) day period provided by Rule 4(a)(1) of the Federal Rules of Appellate Procedure had not expired before the commencement of the bankruptcy case, and (c) the filing of a notice of appeal did not violate the automatic stay. 994 F.2d at 1484–86. The Tenth Circuit stated:

> Autoskill contends that even if § 108(b) extended NESS' time for filing the notice of appeal, the automatic stay of § 362 then in effect made the filing a void act. Under § 362(a)(1) a petition in bankruptcy stays the "continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was ... commenced before the commencement" of the bankruptcy proceeding. Autoskill relies upon the rule that § 362 stays "all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee." *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3d Cir.1982) (emphasis in original).

> We disagree. Autoskill's argument ignores the first ground cited by the bankruptcy judge in recognizing the validity of

4. *See Production Credit Ass'n. of Minot v. Burk,* 427 N.W.2d at 110, stating that:

"An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee's activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act, directly conflict with § 362(a). *Bank of Commonwealth v. Bevan,* supra, 13 B.R. [989] at 994 [(Bankr.E.D.Mich.1981)]."

5. The fact that *Morton* considered section 108(c), and not 108(b), is not a valid reason for distinguishing it because the only substantive difference between the subsections is that 108(b) applies to a debtor's time limitations and 108(c) applies to a creditor's.

the appeal: that Rule 6009 of the Bankruptcy Rules supported NESS' prosecution of the appeal. (footnote omitted). As we read his ruling, the bankruptcy judge felt that Rule 6009 allowed NESS to prosecute its appeal from the preliminary injunction without obtaining relief from the automatic stay of § 362, and we agree (footnote omitted).

*Autoskill,* 994 F.2d at 1485.

The Tenth Circuit then distinguished a number of cases in which further proceedings were stayed because appeals were pending when the bankruptcy case commenced. In both *Autoskill* and here, no appeal was pending at the time of commencement of the case and, therefore, section 108(b) provides the applicable time period within which a motion for leave to appeal must be filed and served.

For the above reasons, section 108(b), not section 362(a), applies here and Appellant's time to file a motion for leave to appeal expired on January 12, 1996.

### 3. *The Lease Could Not Be Assumed*

A debtor's interest in an unexpired lease constitutes property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code, and under Code section 365, a debtor has the right to assume or reject its unexpired leases. Once a lease is terminated, however, nothing remains for a debtor to assume under section 365. *In re GSVC Restaurant Corp.,* 3 B.R. 491, aff'd 10 B.R. 300 (Bankr.S.D.N.Y.1980); *In re Autobahn Classics, Inc.,* 29 B.R. 625, 627 (Bankr. S.D.N.Y.1983).

This Court has recognized that a debtor's inability to assume a lease constitutes "cause" for relief from the automatic stay under Bankruptcy Code section 362(d)(1). *In re GSVC Restaurant Corp.,* 10 B.R. 300 (S.D.N.Y.1980). Other jurisdictions have agreed. *See In re Acorn Investments,* 8 B.R. 506 (Bankr.S.D.Cal.1981); *In re Andorra Meat Market, Inc.,* 7 B.R. 744 (Bankr. E.D.Pa.1980); *In re R.R.S., Inc.,* 7 B.R. 870 (Bankr.M.D.Fla.1980).

This Court's decision in *GSVC Restaurant Corp.* is instructive here. In *GSVC Restaurant Corp.,* this Court affirmed a bankruptcy court order modifying the automatic stay to permit the execution of a warrant of eviction against a commercial tenant, where the tenant had filed Chapter 11 a few hours prior to the scheduled eviction. The Honorable Gerard L. Goettel held that because the lease had been terminated and the debtor had exhausted all legal means for opposing the eviction, the Chapter 11 trustee could not assume the lease under Bankruptcy Code section 365 and, therefore, cause existed to lift the automatic stay and permit the landlord to proceed with the eviction. Judge Goettel's holding is directly on point:

Upon this appeal the debtor argues that the court below did not consider the possible rights of redemption which a tenant might have under N.Y.Real Prop. Acts § 761 (McKinneys, 1979). It is true that a tenant may have such rights, but at this moment they are no more than a chose in action. (footnote omitted) Undoubtedly a trustee or a debtor in possession under the bankruptcy laws may assume and protect whatever rights the debtor had as of the time of the filing. If the termination of a lease has not been completed, or if it can be reversed by application of state procedures (so that the matter is still sub judice), the trustee or debtor in possession may still assume such rights and pursue them. *In Re Burke,* 76 F.Supp. 5 (S.D.Cal.1948). However, a more difficult problem arises where the lease has already been terminated according to its terms under the applicable state law and final state process has been issued evicting the tenant. *Robertson v. Langdon,* 72 F.2d 148 (7th Cir.1934). In this instance, the trustee has nothing to assume. 2 *Collier on Bankruptcy,* ¶ 365.04 (15th ed., 1979). It would be chaotic if every eviction proceeding could ultimately be frustrated by the last minute filing of a Chapter 11 proceeding in federal court. There would be no finality whatever to state court landlord-tenant proceedings.

Moreover, contrary to the assertions of the debtor, the court below assumed that there might be some lingering equitable interest in the premises, but nevertheless determined under the facts established

that the plaintiff was entitled to relief. Considering the continual tactics employed by the debtor in frustrating and delaying the plaintiff's attempts to evict it, in the absence of adequate protection for the plaintiff's interest in the property, this determination was clearly correct. The decision of the bankruptcy court is affirmed. Stay pending appeal is denied. (emphasis added).

*In re GSVC Restaurant Corp.*, 10 B.R. 300, 302. The same policies regarding finality of state court orders are present here.

Here, the Lease was terminated prior to the filing of the Chapter 13 case by proper, final orders of the State Court and Appellate Term. Bell exhausted her state court remedies,[6] and cannot now collaterally attack the decisions of the State Court and Appellate Term.

### 4. The Shares and Lease are Inseparable

The shares of stock in a cooperative corporation and the proprietary lease to which the shares are appurtenant are inseparable. *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d 514, 517 (2d Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990); *see New York State Tax Comm'n v. Shor*, 43 N.Y.2d 151, 154, 400 N.Y.S.2d 805, 806, 371 N.E.2d 523, 524 (1977). The shares are not freely transferable, and have no value independent of the lease. *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d at 517. Bell has no valid lease to transfer and, thus, cannot sell the Shares without a valid lease. The Bankruptcy Court properly concluded that Appellant forfeited the right to control the disposition of the Shares. Bell's inability to transfer the Lease constituted cause for relief from the automatic stay. In the absence of such relief, Alden would be unable to reissue the Share certificates to a new tenant/shareholder and would thus be deprived of a substantial property interest.

▮▮▮▮▮ Bell urges the Court to adopt the reasoning of a New Jersey bankruptcy court case, *In re Robertson*, 147 B.R. 358 (Bankr. D.N.J.1992), which held that even where a

co-op owner's lease had been terminated, her interest in the shares of stock was still entitled to protection. *Robertson*, however, is distinguishable from the case at bar in several important aspects. Most significantly, in *Robertson*, the validity of the termination of the debtor's proprietary lease was still at issue, and the writ of possession could have been vacated by the state court, which might have revived the lease. 147 B.R. at 361. Thus, central to the *Robertson* holding was the Court's recognition that if the termination of the lease was invalid, the lease would constitute property of the estate and would be assumable by the debtor under section 365 of the Bankruptcy Code. *See id.* The Court, therefore, concluded that the debtor's interest in the cooperative apartment was not conclusively terminated prior to the petition and that the lease, as well as the shares appurtenant thereto, were property of the estate protected by the automatic stay. *Id.* at 369. The following excerpt from Bankruptcy Judge Winfield's opinion demonstrates why *Robertson* is not applicable to the instant case:

> It is a well "recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of the bankruptcy proceedings, is not resurrected by the filing of the petition in bankruptcy and cannot therefore be included among the debtor's assets." (citations omitted). Consequently, cause exists for granting relief from the automatic stay when an executory contract is validly terminated prior to the commencement of a bankruptcy case. However, if the termination of an executory contract is not valid, the contract is property of the estate, and accordingly, the Chapter 13 debtor may assume or reject the contract pursuant to the terms of 11 U.S.C. §§ 365 and 1322.

*Robertson*, 147 B.R. 358 at 361 (Bankr.D.N.J. 1992). As set forth above, in the instant case, there remains no possibility that the State Court will vacate the warrant of eviction. The State Court Order was upheld on appeal to the Appellate Term and is *res*

---

**6.** As discussed above, Appellant has not filed a motion for permission to appeal to the Appellate Division and her time to do so has expired. *See* CPLR 5513(b).

*judicata.* Furthermore, here, unlike in *Robertson,* the warrant of eviction has already been executed, and Appellant has forfeited any equitable interest she may have had in the Lease.

Finally, *Robertson* is distinguishable because the underlying judgment in that case, which was based on nonpayment of rent, was obtained by default. Here, although the judgment was originally entered upon default, Bell subsequently appeared and voluntarily entered into a Stipulation of Settlement and thereafter vigorously contested the eviction. Alden submits that the same considerations regarding default judgments do not apply in this case.

Based on the foregoing, the holding in *Robertson* is inapplicable to this case and is not grounds for reversal of the Bankruptcy Court Order.

### 5. *Alden's Interests As a Secured Creditor Were Not Being Adequately Protected*

██ The Bankruptcy Court properly found that Alden's interests as a secured creditor were not being adequately protected under Bankruptcy Code section 362(d)(1) because, although the Lease was terminated and could not be assumed, Alden could not enter into a new proprietary lease with a new tenant and reissue or sell Bell's Shares in order to recover amounts owed to Alden pursuant to the terms of the Lease. That lack of adequate protection justified modifying the automatic stay. In its February 22 Order, the Bankruptcy Court observed:

> In granting relief to Alden, we are only enforcing the bargain that the parties struck many years ago. Bell consented to the terms of the proprietary lease, and as a result, obtained the privileges and benefits of cooperative ownership. She violated the lease, and lost her possessory rights as a result. Her situation is analogous to the mortgagor who breaches a covenant of her mortgage, and loses her property through foreclosure.

██ Once a proprietary lease is cancelled and a debtor is precluded from assuming the lease, the default provisions of the lease control the disposition of the former tenant's stock interest in the cooperative corporation. *See Apartment Corporation Remedies,* Practicing Law Institute, Real Estate Law and Practice Course Handbook Series, PLI Order No. N4–4566, 383 PLI/Real 41 (June 17, 1992). Thereafter, the sale of the stock may be made pursuant to the N.Y.Uniform Commercial Code. Because shares in a cooperative are personal, not real property, security interests in the Shares are governed by UCC Articles 8 and 9. *See Fundex Capital Corp. v. Reichard,* 172 A.D.2d 420, 568 N.Y.S.2d 794 (1st Dept.1991); *Brief v. 120 Owners Corp.,* 157 A.D.2d 515, 549 N.Y.S.2d 706 (1st Dept.1990).

██ It is well-settled that cooperative corporations such as Alden may hold a security interest in the stock issued to tenants by virtue of an issuer's lien, pursuant to UCC Articles 8 and 9, so long as appropriate restrictions on share transferability appear on the share certificate. *ALH Properties Ten, Inc., et al. v. 306–100th Street Owners Corp.,* 86 N.Y.2d 643, 635 N.Y.S.2d 161, 658 N.E.2d 1034 (1995).

The Bankruptcy Court correctly applied the terms of the Lease in its February 22 Order. Under the terms of the Lease, the Shares in the Alden cooperative corporation are not freely transferable (¶ 45 of Lease) and have no value independent of the Lease. (¶ 45 of Lease).

The Lease further provides that the Shares can be transferred only in connection with the simultaneous transfer of the Lease. (¶ 45 of Lease). Upon termination of the Lease, the tenant is required to surrender to Alden the certificate for the shares of the corporation to which the Lease is appurtenant (¶ 32(c) of Lease), and if the tenant refuses to surrender the shares, Alden has the right to cancel the tenant's share certificates and relet the Apartment by issuing stock to a new tenant.

### B. *The Lease Does Not Require Alden to Obtain Board Approval for a Sale of the Shares or a Buyer Prior to Seeking the Bankruptcy Court's Authorization to Cancel the Share Certificates and Sell Appellant's Shares*

██ Bell argues that Alden did not satisfy the provisions of paragraph 32(c) of the

Lease, and that the Bankruptcy Court erred in authorizing the cancellation of the Share certificates and the sale of the Shares without requiring compliance with paragraph 32(c). Pursuant to the Lease, if Bell fails to surrender the Share certificates, an appropriate resolution by the board of directors must predate any issuance of new share certificates to a purchaser. Bell misreads this provision. Alden's motion merely sought authorization to sell the Shares or issue new share certificates. Prior to issuing new certificates, Alden will obtain an appropriate resolution of its board of directors. The fact that such a resolution was not obtained prior to Alden's motion is of no consequence.

Similarly, Bell's argument that a purchaser was required to be obtained prior to Alden's Motion is incorrect. Section 32(c) of the Lease merely provides that new share certificates may be issued when a new purchaser is obtained.

*Conclusion*

The February 22, 1995 Order of the Bankruptcy Court is hereby affirmed.

It is so ordered.