Roger D. MALKIN, Plaintiff,

v.

UNITED STATES DEPARTMENT OF the TREASURY–INTERNAL REVENUE SERVICE, Citibank, N.A., and Hugh W. Levey, Defendants.

No. 83 Civ. 8549 (PNL).

United States District Court, S.D. New York.

Oct. 14, 1986.

Rudolph W. Guiliani, U.S. Atty. for the S.D.N.Y., New York City, Harriet L. Goldberg, Asst. U.S. Atty., of counsel, for defendant U.S. Dept. of the Treasury I.R.S.

Morrison Cohen & Singer, New York City, Donald H. Chase, of counsel, for defendant Hugh W. Levey.

LEVAL, District Judge.

This is an interpleader action involving various claims against assets of Roger D. Malkin, consisting primarily of the proceeds of the sale of his cooperative apartment. The Internal Revenue Service (I.R.S.) moves for partial summary judgment declaring that its tax lien for plaintiff's 1980 taxes is superior to all other claims, and awarding it $648,055.74 plus interest out of the fund. Defendant Hugh Levey opposes the motion, and moves to amend his answer to assert a claim against the Government. The motion of the I.R.S. is granted; Levey's motion is denied.

*Background*

On December 7, 1981, the I.R.S. issued to plaintiff Roger Malkin notice and demand for payment of unpaid 1980 income taxes. Unsure whether Malkin was a resident of Stamford, Connecticut or New York City, the Government recorded notice of its 1980 tax lien with the Stamford Town Clerk (June 10, 1982), the Connecticut Secretary of State in Hartford (June 15, 1982) and the New York City Register (July 7, 1982). In December 1982, Levey acquired a security interest in "(a) the Shares, (b) the Proprietary Lease, (c) the Apartment, (d) all distributions on, additions to, substitutions for or replacements of . . ., and (e) the proceeds from any sale or other transfer of all or any part of" Malkin's New York City cooperative apartment. For the purposes of the Government's motion, it is uncontested that Levey's security interest was perfected as of December 10, 1982, and that Levey did not receive any actual notice of the I.R.S. lien prior to that date.

The Government claims priority pursuant to the provisions of 26 U.S.C. § 6323. Levey argues that his interest was in a security, as defined by 26 U.S.C. § 6323(h)(4), and that he was therefore entitled to actual notice of the tax lien. Levey further argues that a question of fact exists as to the continued validity of the tax liens, and finally, that the Government should be compelled to proceed first against certain property of Malkin's located in Connecticut.

*Discussion*

Federal law controls this question of priority. *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 49, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). If Levey's security interest is deemed to be in a security, then he would have priority over all claims of which he did not have actual notice. § 6323(b)(1)(B). If it is not, then the traditional rule—first in time, first in right—would apply, constructive notice of a perfected lien would be sufficient, and the Government's tax lien would have priority. For the purposes of the tax lien provisions, security is defined in § 6323(h)(4) as follows:

> The term "security" means any bond, debenture, note or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.

The reason for the distinction between securities and other types of property is the recognition that stocks and bonds are,

and should be, freely and easily marketable. Purchasers buy securities on stock and bond markets through brokers generally without even learning who their seller is. If such a purchaser ran the risk of tax liens filed against the seller's property, securities markets could no longer function with freedom; the purchase of stocks would become an expensive transaction involving representations and warranties, attorneys on both sides, searches of security filings, etc. In contrast, transactions in most other types of property have traditionally involved face to face dealing, negotiation, and higher transaction costs. It is more reasonable in such cases and more consistent with generally shared expectations to make purchasers responsible for filed tax liens. Levey argues that his security interest is in *shares* of the cooperative apartment, and thus pertains to a security, as defined. This contention is not persuasive.

Although it is true that the package of rights to which Levey's security interest pertains includes shares of stock in the cooperative building corporation, what is really involved in real estate—a residential apartment. The shares are not separately traded without the proprietary lease for the particular apartment. The shares confer no independent rights, apart from the lease. To consider the shares alone as giving the character of a "security" to the asset is to distort its true nature.

Furthermore, cooperative apartments are not traded in the free and simple manner that generally characterizes transactions in shares of stock. The transactions typically involve periods of negotiation, further lapse of time between agreement and written contract and still further lapse of time prior to closing. Closing documentation is complex, and title searches are commonplace. Thus the policy concerns favoring swift and cheap negotiability that led to adoption of the actual notice rule for "securities" has no application whatever to cooperative apartments.

In a different but relevant context, the Supreme Court explained "the name given to an instrument is not dispositive" in determining whether it is a security. *United Housing Foundation v. Forman*, 421 U.S. 837, 850, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). The Court there held that shares in a publicly funded cooperative apartment building did not constitute a security for the purposes of the securities laws. The Court of Appeals has held that this ruling applies as well to private cooperative apartments. *Grenader v. Spitz*, 537 F.2d 612, 617 (2d Cir.1976). Of course, those decisions interpreting the laws of the regulation of securities do not control the interpretation of the tax lien provisions, but they do involve some of the same considerations.

I conclude that for determinations of priority of tax liens, the assets here in question are not a security as defined in § 6323(h)(4).

■ Levey next asserts that certain documents produced in discovery create a substantial question of material fact as to whether the 1980 tax liability has been settled by the government. The documents raise no such question, and the government has supplied an affidavit from an I.R.S. Revenue Officer stating that "the liens based on the taxes owed for 1980 have never been released and indeed the 1980 taxes have never been satisfied." The settlement documents either apply to other years of tax liability, or are unexecuted copies normally generated at the time a lien is imposed. These documents raise no question of fact that precludes grant of summary judgment.

■ Levey also argues that the Government should be enjoined to foreclose its liens on Malkin's Connecticut property rather than against the interpleaded fund to his detriment. This is also the subject of Levey's motion to amend his answer to include this claim for relief against the government. A substantial question arises whether such an injunction would be permissible. The anti-injunction act, 26 U.S.C. § 7421, prohibits, with a few limited exceptions, any suit "for the purpose of restraining the assessment or collection of any tax...." Arguably, Levey's application

for an injunction runs afoul of this statute. It is unnecessary to reach this issue, however, for this court will not exercise its equitable powers to instruct the I.R.S. as to how it should collect on its tax liens.

For the reasons stated above, the Government's motion for partial summary judgment is granted. The Government is entitled to collect the 1980 back taxes plus all lawful penalties and interest from the interpleaded fund. As a result of this decision, Levey's motion to amend his answer to assert his injunction claim against the Government is mooted, and is therefore denied.