**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**110–118 RIVERSIDE TENANTS CORPORATION, Defendant–Appellant.**

**No. 1207, Docket 89–6041.**

United States Court of Appeals,
Second Circuit.

Argued June 7, 1989.

Decided Sept. 28, 1989.

---

Marc J. Luxemburg, New York City (Ronald J. Katter, Snow Becker Krauss, of counsel), for defendant-appellant.

Victor Olds, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty., Richard W. Mark, Asst. U.S. Atty., New York City), for plaintiff-appellee.

Before FEINBERG and KEARSE, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

Defendant–Appellant 110–118 Riverside Tenants Corporation ("Apartment Corporation") appeals from a decision and order of the United States District Court for the Southern District of New York (John M. Cannella, J.) granting a motion by plaintiff-appellee United States of America ("Government") to compel the law firm of Snow Becker Krauss, P.C. to turn over funds in an escrow account representing the balance of the proceeds of a sale of a cooperative apartment formerly owned by taxpayer John G. Broady.

### Background

This case involves the unique property rights of the owner of a cooperative apartment. Ordinarily the purchaser of a cooperative apartment receives a package of rights constituting a proprietary lease (standard as to all tenants) of the premises and a number of shares of the cooperative building corporation which are allocated to the purchaser depending on the size of the apartment. On December 1, 1968 John G. Broady acquired a cooperative apartment ("Apartment") at 110 Riverside Drive, New York, by purchasing 417 shares of stock in the Apartment Corporation and signing a proprietary lease ("Lease") for the Apartment.[1] Among other things, the proprietary lease involved here provides that shares cannot be transferred, except to the lessor, or after compliance with the provisions of the lease relevant to the assignment of the lease (A–167); that there shall be no assignment of the lease without the transfer of all the shares allocated thereto (A–148–49); that the Board must approve the transfer of the shares and the assignee (A–149); that the lease shall expire on ten days' notice if at any time during the term of the lease the lessee shall cease to be the owner of all the shares (A–159–60); and finally, that unless the owner of the shares pays his monthly proportionate share of the maintenance, after ten days' notice of default the lease shall terminate and the shares shall be surrendered to the Apartment Corporation. (A–160, 163). Thereafter the Apartment Corporation shall sell the shares at a private or public sale, applying the proceeds and expenses of the sale to the indebtedness of the lessee and paying over any surplus to the lessee. (A–163)

In 1975 the Internal Revenue Service filed notices of tax liens against Broady pursuant to Title 26 United States Code Section 6321 for unpaid taxes for the years 1951–1954. In 1979 the Government commenced an action in the district court against Broady and the Apartment Corporation for Broady's unpaid assessed taxes and moved to foreclose tax liens on Broady's shares of stock. In 1984 the Government was awarded judgment against Broady for $2,396,264.12, and on March 11, 1985 a judgment on the shares of the Corporation was entered.

It was not until after foreclosure of the lien, in April 1985, that Broady defaulted on his maintenance payments due to the Apartment Corporation. As stated above, the shares of the stock of the Apartment Corporation are allocated to a specific lease without which they cannot be effectively sold. They are not freely negotiable and confer no independent rights separate from the Lease. By the same token, the Lease cannot be assigned without the assignment of the shares.

---

* Honorable John R. Bartels, Senior Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. The Lease provides:
   In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there will be specified, the number of shares of the Lessor appertaining thereto. The number of shares specified in this lease in relation to the aggregate of all numbers of shares similarly specified in all the proprietary leases at the time in force, shall constitute the basis for fixing, as hereinbefore provided, the proportionate share of the aggregate amount of the cash requirements of the Lessor, as hereinbefore defined, which shall be payable as rent by the Lessee. (A–143).

Efforts were made by the Apartment Corporation to evict Broady, which was accomplished in July 1986, and, in July 1987, the Apartment Corporation entered into a contract for the private sale of the shares of stock. In September 1987 the Apartment Corporation moved for an order approving the private sale of the Apartment "after payment of monthly arrearages owed by defendant Broady to the cooperative corporation and the corporation's costs and disbursements (including legal fees and disbursements) necessarily incurred in connection with the dispossess proceeding and sale." (A–47) In December 1987, the Government moved to approve the private sale of the Apartment.

On January 27, 1988 the parties entered a stipulation (A–116) regarding the sale of Broady's shares. Four months later, in April 1988, Broady's shares were sold for $901,030. Under the stipulation, the sum of $90,103, to which the Apartment Corporation claimed it was entitled under the terms of the Lease for unpaid maintenance charges, legal fees, and other miscellaneous charges, was placed in escrow by Snow Becker Krauss, P.C., the counsel for the Apartment Corporation, pending the disposition of this case. Thereafter, without authorization from the district court or permission from the Government, Snow Becker Krauss, P.C. paid $9,207 out of the escrow fund to the City of New York as a Real Property Transfer Tax which Judge Cannella ordered to be returned to the escrow account since he adjudged that all the proceeds belonged to the Government.

The Apartment Corporation contends that it is entitled to the entire escrow fund since under the terms of the Lease Broady was indebted to the Corporation for maintenance charges and was entitled only to the *net* proceeds of the sale of the Apartment, after payment of his debts to the Corporation. The Government, on the other hand, claims the entire fund on the theory that the tax liens attached to the *gross* proceeds of the sale prior to the Corporation's claim to Broady's indebtedness. In addition, the Government claims it is not liable for the expense of the sale and that the $9,207

expenditure for the transfer tax should be returned to the escrow fund.

The District Court held that the federal tax lien had priority over the competing claim of the Apartment Corporation and awarded the entire proceeds of the sale to the Government.

### DISCUSSION

#### I.

*Separability of Shares and Lease*

■ Both parties question the effect of the Government's tax lien upon the shares of stock. The Apartment Corporation contends that while the Government attached only the shares and not the Lease, the lien was nevertheless subject to Broady's contractual obligation to pay maintenance under the Lease. The Government, however, contends that the lien attached to the shares separately from Broady's contractual obligation to pay maintenance.

Before discussing the conflicting claims of the parties, a consideration of the dual nature of a cooperative apartment is appropriate. It was necessary in order to sell this Apartment that both parties come to some sort of an agreement since the sale of the shares alone would be futile and the issuance of a new lease without shares would be equally futile because no purchaser or lessee would acquire the Apartment without both.

Unlike the common understanding of the term "stock," the shares of "stock" in the Apartment Corporation are not freely transferable, and they have no value independent of the Lease for the Apartment. *See Grenader v. Spitz*, 537 F.2d 612, 617 (2d Cir.), *cert. denied*, 429 U.S. 1009, 97 S.Ct. 541, 50 L.Ed.2d 619 (1976), *Malkin v. United States Dep't of Treasury–I.R.S.*, 645 F.Supp. 229, 231 (S.D.N.Y.1986). *See also In re Matter of Carmer*, 71 N.Y.2d 781, 525 N.E.2d 734, 530 N.Y.S.2d 88 (1988), *State Tax Comm'n v. Shor*, 43 N.Y.2d 151, 371 N.E.2d 523, 400 N.Y.S.2d 805 (1977). As a matter of fact, the stock certificates have printed on their reverse sides the statement that they are subject to the terms of the Lease, which, when added

to the terms of the Lease, indicates that the two are inseparable and that a lien on the shares is sufficient to preclude the transfer of the Lease and for all intents and purposes is also a lien on that Lease.

We hold that the shares of stock and the Lease are inseparable and must be treated as a unit. Thus, we are presented with the issues of whether the Government imposed a lien on all of Broady's property prior to the claim of the Apartment Corporation to the proceeds of the sale and, if the Government has such a prior claim, to what extent the costs and expenses incurred by the Apartment Corporation in effectuating the sale of the shares should be awarded to the Apartment Corporation.

## II.

### *Priority of the Government's Lien*

Title 26 United States Code Section 6321 authorizes the imposition by the Government of a tax lien upon the property of the taxpayer when he is in default. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985).

■ The priority of a federal tax lien is a matter of federal law. *United States v. Acri,* 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1954). If we consider the claim of the Apartment Corporation as a secured interest in the nature of a lien, as it is treated by both the Government and the District Court, then determination of its priority is necessary. In determining whether the tax lien has priority over a competing lien or claim, it is necessary to look at two factors: (1) chronological priority and (2) compliance with the doctrine of choateness. *See J.D. Court, Inc. v. United States,* 712 F.2d 258, 261 (7th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 182 (1984). As stated by the Supreme Court in *United States v. Equitable Life Assurance Society:*

> As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule "first in time is first in right," which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was "specific and perfected." A state lien is specific and perfected when "there is nothing more to be done ...—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." ["]Thus, the priority of [the nonfederal lien] ... must depend on the time it attached to the property in question and became choate."

384 U.S. 323, 327–28, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966) (quoting *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954)).

■ There is no doubt that the Government's lien was filed prior to any claim asserted by the Apartment Corporation and therefore chronological priority was established. For a lien to be "choate" i) the identity of the lienor must be established, ii) the property subject to the lien must be established, and iii) the amount of the lien must be certain. *United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369–70, 98 L.Ed. 520 (1954). The fact that the amount is calculable once default occurs is not sufficient to make it choate. *United States v. Equitable Life Assurance Society,* 384 U.S. at 328–29, 86 S.Ct. at 1564–65. The amount of the Apartment Corporation's claim against Broady was not fixed and was inchoate at the time of the imposition of the Government's lien. Consequently, the Government's lien upon the shares of Broady was prior, in all respects, to the claim of the Apartment Corporation. But this conclusion does not end the inquiry.

■ The Apartment Corporation strongly argues that the issue is not one of priority or choateness but the extent to which Broady had a property interest in his shares at the time the Government imposed its lien. Of course, the imposition of a tax lien must be limited to the actual property interest of the taxpayer. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), *United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983). Whether Broady had a property interest when the Government filed its lien is a question of

state law. *Aquilino v. United States,* 363 U.S. at 513, 80 S.Ct. at 1280. The Lease states, "The Lessor may apply the proceeds received for the issuance of such [new] shares towards the payment of the Lessee's indebtedness hereunder, including interest, attorneys' fees and other expenses incurred by the Lessor and if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but if such proceeds are insufficient the Lessee shall remain liable for the balance of indebtedness." (A–163) For this reason the Apartment Corporation states that the surplus due Broady was all that the Government's lien covered.

In support of this position the Apartment Corporation cites *Chicago Mercantile Exchange v. United States,* 840 F.2d 1352 (7th Cir.1988). In that case the Internal Revenue Service imposed a tax lien on the taxpayer's property which included a seat on the Chicago Mercantile Exchange. The Seventh Circuit found that a member of the Exchange had no interest in the proceeds of the sale of the seat until after the Exchange debt was satisfied and, therefore, it concluded the tax lien of the Government could only attach to the net proceeds of the sale since the gross proceeds did not belong to the taxpayer. *Id.* at 1356. The decision was predicated upon the fact that the rules of the Exchange set forth elaborate transfer procedures and also that a member had no rights in the membership except as granted by these Rules, which provided that the debt owed to the Exchange had priority. That court relied on two Supreme Court decisions holding that the exchange priority rules were "incidents of the membership interest at its inception," *id.* at 1358 (citing *Chicago Bd. of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924), *Hyde v. Woods,* 94 U.S. (4 Otto) 523, 24 L.Ed. 264 (1876)); *accord, Belton v. Hatch,* 109 N.Y. 593, 17 N.E. 225 (1888) (New York law); and held that "[t]he rules of the exchange *create* the property and they govern its attributes." 840 F.2d at 1356. It added that "our holding is very narrow." *Id.* at 1358. In a footnote the court stated, albeit in a different context, that "a condominium association could draft rules stating that no member could sell his or her unit without paying off debts to other members. This example actually lends credibility to our decision: such a rule would *not* have priority over a tax lien on the condominium unit ... under state law. It is merely a consensual security interest created later, and would therefore not prevail over a filed tax lien." *Id.* at 1358 n. 7.

The nearest approach to an analogous property interest of the shareholder in this case appears in Article III, paragraph FOURTH of the Lease, which provides: "The Lessor may apply the proceeds received for the issuance of such [new] shares towards the payment of the Lessee's indebtedness hereunder ... and if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee...." From this language the Apartment Corporation contends that since Broady was only entitled to the surplus from the sale proceeds after the Apartment Corporation had been paid its indebtedness, Broady, like a member of the Chicago Exchange, had no property interest in the stock, except in such a surplus, and that this was the only property interest upon which the Internal Revenue Service could impose a tax lien.

But shares of stock in a cooperative corporation are not the same as memberships in an exchange. A seat on an exchange and the interest of a member are encumbered with conditions not applicable to shares in a cooperative. Here the shareholder is entitled to the full value and property interest of the shares subject only to default and can transfer the same subject to the consent requirement of the Lease. We conclude that *Chicago Mercantile* is not controlling as to cooperative apartments. More important in this case is the fact that at the time the Government imposed its tax lien there was no default by Broady and no indebtedness due to the Apartment Corporation so it had no right at that time to sell the shares nor any right to the proceeds thereof. At that moment Broady's property interest was to all the proceeds of the shares.

## III.

### *The Corporation's Claim to Maintenance Charges and Expenses*

■ The judgment of foreclosure was obtained by the Government in March of 1985; however the sale of the shares of the stock did not occur until 1988—a period of three years later. Broady was evicted in July of 1986. During the ensuing period both the Apartment Corporation and the Government could have taken prompt steps to sell the Apartment and the appurtenant shares and assign the leasehold thereof. They could have entered into a stipulation sooner than July, 1987, for the sale of the Apartment. It was not until eighteen months after the eviction that the sale of the shares was effectuated. During that time, of course, unpaid maintenance charges accrued. The Apartment Corporation does not point to a particular time or date after Broady's eviction when the Government could have effected a sale. Likewise, the Apartment Corporation does not indicate that it was ready and able to assign the Lease and effectuate a sale on an earlier date but was unable to do so because of the Government's recalcitrance. Thus it is difficult to assess liability against the Government for the maintenance charges during the period the Apartment was vacant, before the actual sale of the shares. It is true, however, that it was the Apartment Corporation that solicited bids and contracted for and effectuated the sale of the shares of stock, which the district court confirmed. The Government paid none of the expenses incurred in these proceedings.

Accordingly, we find that there are expenses of the foreclosure proceeding which, in all fairness, should be paid by the Government. It was the Government whose duty it was to foreclose the tax lien and collect the taxes from the sale of the shares. This necessitated a number of expenses including attorneys' fees since the Government shifted to the Apartment Corporation the burden of conducting the eviction proceeding as well as the sale of the stock.

We believe the costs and expenses of eviction and of the sale of the shares should be paid by the Government and that the same should be deducted from the escrow fund before payment of the remainder to the Government.

### *Costs of Foreclosure and Sale*

There seems to be little doubt that if the sale of the stock had been effectuated by the Government, it would have been liable for the costs of the levy and sale. Title 26 United States Code Section 6342 reads, in relevant part, as follows:

(a) Collection of liability.—Any money realized by proceedings under this subchapter (whether by seizure, by surrender under section 6322 (except pursuant to subsection (c)(2) thereof), or by sale of seized property) or by sale of property redeemed by the United States (if the interest of the United States in such property was a lien arising under the provisions of this title) shall be applied as follows:

(1) Expense of levy and sale.—First, against the expenses of the proceedings;

*See Maryland National Bank v. United States,* 227 F.Supp. 504 (D.Md.1964) (holding that the regulations under 26 U.S.C. §§ 6341–42 imply that when the Government seizes property the Government will pay the expenses of the levy from the proceeds of the sale). *See also Smith v. United States,* 458 F.2d 1231 (9th Cir.1972), *American Oil Company v. United States,* 383 F.Supp. 1281 (N.D.Okla.1974). Accordingly, there is no reason why the Government should not be liable to the Apartment Corporation for the expenses of these proceedings.

The attorneys' fees incurred by the Corporation for selling the shares for the Government are in the same category as expenses of foreclosure and sale proceedings which the Government would have been required to incur. Nevertheless, the Government claims that the defendant is barred from receiving attorneys' fees and transfer tax charges until the Government's lien has been satisfied. For this principle it cites a number of cases includ-

ing *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). However, the Government has misunderstood the nature of attorneys' fees and expenses in this case. These fees are not attorneys' fees of a third party or of the Apartment Corporation in foreclosing its claim. They are, in reality, attorneys' fees and expenses which would be charged to the Government if it had foreclosed its own lien and sold the shares of stock.

### Creation of Fund—Unjust Enrichment

A person who is unjustly enriched at the expense of another should be required to make restitution to the other. Restatement of Restitution § 1. It is well established that the creator of a fund is entitled to the expenses of creation. "A person who through legal proceedings procures or preserves property in which he and another have an interest may be entitled to reasonable compensation for his services and restitution of his expenses in obtaining or preserving the property." *Id.* § 105(2).

█ Here there is no doubt that the Apartment Corporation was the acting party that created the fund. The Apartment Corporation carried out the Lease's default procedures, brought suit to evict Broady, evicted Broady, obtained appraisals of the Apartment, determined a method of sale, solicited bids, negotiated a contract of sale, sold the Apartment, and made a motion to confirm the sale. Where a party creates a substantial fund at the behest of and for the benefit of another party, equity requires that the expenses of the creator of the fund be paid out of the fund. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). *See also Trustees v. Greenough*, 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1881) (where the Court held that when one of many parties having an interest in a trust fund preserves the fund at his own expense he is entitled to reimbursement from the fund or from the other parties, and this rule applies in creditors' suits and bankruptcy cases as well).

### Transfer Tax

█ The New York Real Property tax in the amount of $9,207 is an expense of the sale. If it is valid and chargeable, it should be charged to the Government as an expense of the sale, and Snow Becker Krauss would therefore be under no obligation to return that sum to the escrow fund.

### CONCLUSION

From the foregoing we conclude that the Government's lien extended to all the proceeds of the shares of stock and that as a matter of equity the Government must pay to the Apartment Corporation the expense of preparing the Apartment for sale, evicting Broady, selling the stock including all appurtenant attorneys' fees, as well as expenses incidental thereto. Snow Becker Krauss, P.C. is authorized to transfer to the Government the proceeds it holds in escrow after transferring to the Apartment Corporation the above-described costs, expenses, and attorneys' fees.

The judgment of the District Court is affirmed with the above-noted modifications.