**TRAFALGAR POWER, INC. and Christine Falls Corporation, Plaintiffs,**

v.

**AETNA LIFE INSURANCE COMPANY, Algonquin Power Corporation, Inc., Algonquin Power Income Fund, and Algonquin Power Fund (Canada) Inc., Defendants.**

**Algonquin Power Corporation, Inc. and Algonquin Power Income Fund, Plaintiffs,**

v.

**Trafalgar Power, Inc., Christine Falls Corporation, Pine Run Virginia, Inc., and American Casualty Company of Reading, Pennsylvania, Defendants.**

**No. 99–CV–1238, 00–CV–1246.**

United States District Court, N.D. New York.

April 23, 2001.

Harris, Beach & Wilcox, Rochester, NY, Paul J. Yesawich, III, for Plaintiffs (99–CV–1238) & for Defendants (00–CV–1246).

Nixon Peabody, LLP, Rochester, NY, Robert B. Calihan, Andrew M. Burns, for Defendant Aetna Life Insurance Company (99–CV–1238).

Menter, Rudin & Trivelpiece, Syracuse, NY, Mitchell J. Katz, Rackemann, Sawyer & Brewster, Boston, MA, J. David Leslie, Eric A. Smith, Brian M. Hurley, for Defendants Algonquin Power Corporation, Inc., et al., (99–CV–1238) & Plaintiffs (00–CV–1246).

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

By order dated February 13, 2001, this court preliminarily enjoined Trafalgar Power, Inc. (TPI), from assigning or otherwise disbursing a judgment it had obtained in a separate yet related malpractice action. The tort judgment proceeds are currently being held in an escrow account pending determination on the merits of the parties' various claims. TPI now seeks reimbursement from those proceeds the amount that it expended in securing the tort judgment and, to that extent, moves to modify this court's prior order. For the following reasons, the court denies the motion.

## BACKGROUND

The full facts of this consolidated action are set forth in a prior memorandum-decision and order, see 131 F.Supp.2d 341, and only the facts necessary to resolve the instant motion need be discussed. TPI obtained a $7.6 million tort judgment in a professional malpractice action against the engineers and architects of certain hydroelectric power plants located in Upstate New York. TPI subsequently commenced this breach of contract action against Algonquin Power Corporation, Inc. and Aetna Life Insurance Company (99–CV–1238), alleging that Aetna improperly transferred to Algonquin certain notes evidencing Aetna's loan to TPI. Algonquin asserted counterclaims seeking both a declaration that it rightfully owns the above notes, and money damages stemming from TPI's alleged breach of an agreement relating to the notes.

Thereafter, TPI assigned the entire tort judgment it had received from the earlier malpractice action to Pine Run Virginia, Inc. After learning of that assignment, Algonquin commenced 00–CV–1246, alleging that TPI's assignment to Pine Run was an improper attempt to frustrate any potential judgment Algonquin might realize on its counterclaims in 99–CV–1238. This court subsequently granted Algonquin's

motion for a preliminary injunction and precluded TPI from assigning or disbursing the tort judgment. The proceeds from the malpractice action were ultimately placed in an escrow account pending a determination on the merits on the parties' various claims.

## DISCUSSION

TPI now moves to modify this court's order preliminarily enjoining it from distributing any funds held in the escrow account. Specifically, TPI seeks to recover from the proceeds of the frozen tort judgment the amount it expended in attorneys' fees and expenses litigating the malpractice action which produced the judgment. TPI argues that even if Algonquin has a potential property interest in the tort judgment proceeds by virtue of its counterclaims in 99–CV–1238, TPI is nonetheless entitled to reimbursement because TPI's expenditures created the fund from which Algonquin may benefit. In support of this argument, TPI relies on *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d 514 (2d Cir.1989), among other cases, for the proposition that a party that obtains the benefit of a lawsuit without contributing to its cost is unjustly enriched at the expense of the party who created the fund.

Algonquin counters that TPI is not entitled to any proceeds of the tort judgment because it assigned all of those proceeds to Pine Run and, thus, the very terms of that assignment prohibit TPI from now collecting its expenses from the judgment. Algonquin further argues that TPI's cited case law is distinguishable from these facts, and that no authority supports a situation where, as here, a potential debtor such as TPI seeks to recover the expenses from a fund it created before paying its potential creditor. Algonquin urges the court to leave the tort judgment undis-turbed until a final decision and judgment is reached on the merits in the underlying action.

Algonquin has the better argument here. First, TPI had an opportunity to reserve payment for its expenses in litigating the malpractice action when it assigned the tort judgment to Pine Run. It chose not to do so. The assignment states that TPI "does assign transfer and set over to Pine Run, its successors and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon" (Assignment of Judgment, Mem. of Law in Opp. to TPI's Order to Show Cause, Exh. A). Regardless of the fact that TPI and Pine Run are both owned by Arthur Steckler, permitting TPI to now dip into the tort judgment would clearly violate the express terms of the assignment.

Even assuming that TPI has any rights left in the tort judgment, its reliance on *United States v. 110–118 Riverside Tenants Corp., supra,* is distinguishable from the facts presented here. In *Riverside,* the Internal Revenue Service filed a lien for unpaid taxes against the owner of an cooperative apartment in the Riverside building, and a foreclosure action resulted in the government being awarded judgment on the shares representing the taxpayer's ownership of the apartment. *See* 886 F.2d at 516. After the owner eventually defaulted on his maintenance payments, Riverside evicted him and, with the approval of the government, sold the apartment. *See id.* at 516–17. Both the government and Riverside then claimed rights to the proceeds of the sale. *See id.* at 517.

The Second Circuit held that since that government had the responsibility to enforce its judgment by collecting taxes from the sale of the shares, it should bear the

expenses of the sale and eviction. *See id.* at 520. The Court stated:

> Where a party creates a substantial fund at behest of and for the benefit of another party, equity requires that the expenses of the creator of the fund be paid out of the fund. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.

*Id.* at 521 (quoting in part *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980)) (internal quotations omitted).

Here, Algonquin apparently was aware of TPI's prosecution of the malpractice action, but declined to join the action. Unlike the government in *Riverside,* however, Algonquin had no obligation to join TPI in the malpractice litigation. TPI's recovery of the tort judgment had nothing to do with Algonquin's counterclaims against TPI, and TPI did not obtain the tort judgment at the behest of or for the benefit of Algonquin.[1]

More importantly, the government and the apartment cooperation in *Riverside* were both *creditors* as to the owner. Here, TPI and Algonquin are not on similar equal footing because TPI is a potential *debtor* to Algonquin. TPI does not cite, and independent research by this court has not uncovered, authority to support the proposition that a debtor is entitled to recover fees expended to create a fund before satisfying a judgment creditor. Section 105(2) of the Restatement of Restitution, also quoted by the *Riverside* Court, states that "[a] person who through legal proceedings procures or preserves property in which he and another have an interest may be entitled to reasonable compensation for his services and restitution of his expenses in obtaining or preserving the property." Restatement of Restitution § 105(2) (1937), *see also* 886 F.2d at 521. That section's comments, however, make clear that the above rule applies to persons who secure property which was not otherwise obtainable, and that property not only benefits themselves but an entire class. *See* Restatement of Restitution § 105(2) cmt. g (stating that the situations applicable to this rule occur where a stockholder brings suit against the directors or management of a corporation for the purpose of protecting the interests of himself and other stockholders and then succeeds in obtaining, for the benefit of all, property which would not have otherwise been obtained; or where a creditor interested in the administration of an estate brings a proceeding in a probate court, thereby obtaining administration of the estate which inures to the benefit of himself and other creditors or beneficiaries). Here, TPI's prosecution of the malpractice action may indirectly benefit Algonquin if Algonquin prevails on its counterclaims, but Algonquin is not the same type of class beneficiary illustrated above.

---

1. *United States v. Hubbell,* 323 F.2d 197 (5th Cir.1963), is similarly distinguishable from these facts. The government in *Hubbell* obtained a tax lien on a painter named Lewis. Lewis eventually realized some proceeds from a breach of contract action he had joined with a former general contractor. The general contractor, however, was entitled to a portion of Lewis' judgment because of an earlier agreement the parties had entered into whereby the general contractor would bear all the expenses of the lawsuit in return for a portion of Lewis' judgment. Thus, the government and the general contractor both had a claim on the judgment. The Fifth Circuit held that the general contractor was entitled to recover his attorneys' fees in light of the fact that he created the fund the government benefitted from due to its superior tax lien, and the government had assured the general contractor's attorneys that they would be "taken care of." 323 F.2d at 201.

In sum, even assuming that TPI still has rights to the judgment considering its assignment to Pine Run, TPI clearly did not secure the tort judgment at the behest of and for the benefit of Algonquin, or anyone else. Additionally, Algonquin and TPI do not have similar interests in the judgment due to their potential debtor-creditor relationship. Thus, the most prudent course of action here is to maintain the status quo pending the outcome of the litigation.

## CONCLUSION

Having carefully considered the parties' submissions in this matter, the court declines to modify its February 13, 2001 order which preliminarily enjoins TPI from assigning or otherwise disbursing the funds being held in a Morgan Stanley Dean Witter escrow account. Accordingly, TPI's motion is DENIED.

IT IS SO ORDERED.