Stoll, Circuit Judge,
dissenting.
Under the American Rule, “each party in a lawsuit ordinarily shall bear its own attorney’s fees unless there is express statutory authorization to the contrary.” Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It erects a strong presumption against fee-shifting, requiring an explicit provision permitting a departure from the American Rule or other evidence of congressional intent to make such an award available. Section 145 neither mentions “attorneys’ fees” nor reflects a congressional intent to authorize them. Because I believe § 145 fails to provide the necessary congressional directive to overcome the American Rule’s bar against shifting attorneys’ fees, I respectfully dissent.
I.
The majority expresses “substantial doubts” regarding whether the American Rule applies to § 145. Maj. Op. 1355. But Supreme Court precedent makes clear that the American Rule marks the starting point for any analysis that shifts fees from one litigant to another. Often referred to as a “bedrock principle,” the American *1361 Rule requires that “[e]ach litigant pay[] his own attorney’s fees, win or lose, unless a statute or contract provides otherwise.” Baker Botts L.L.P. v. ASARCO LLC, — U.S. -, 135 S.Ct. 2158, 2164, 192 L.Ed.2d 208 (2015) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)). This presumption against fee shifting in American litigation dates back more than 200 years to Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796). “[T]he law of the United States, but for a few well-recognized exceptions not present [here], has always been that absent explicit congressional authorization, attorneys’ fees are not a recoverable cost of litigation.” Runyon v. McCrary, 427 U.S. 160, 185, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (footnote omitted).
While Congress remains free to draft statutes providing for the award of attorneys’ fees, any such deviation from the American Rule must be “specific and explicit,” for Congress has not “extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 260-62, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (citing statutory provisions containing the phrase “attorney’s fees” as examples of “specific and explicit provisions for the allowance of attorneys’ fees”). Several cases have recognized that a statute’s failure to reference “attorneys’ fees” is not always dispositive, but the statute must “otherwise evinee[] an intent to provide for such fees.” See, e.g., Key Tronic Corp. v. United States, 511 U.S. 809, 815, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). This necessitates resort to the ordinary meaning of the phrase that is alleged to shift attorneys’ fees and the legislative history of the statutory provision to see if such an intent exists. Id. at 817-19, 114 S.Ct. 1960; Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am., 456 U.S. 717, 722-23, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982).
II.
It is against this backdrop that we analyze whether Congress expressed an intent “to set aside this longstanding American rule of law,” Runyon, 427 U.S. at 185-86, 96 S.Ct. 2586, and award attorneys’ fees under § 145. In order to shift the PTO’s attorneys’ fees to NantKwest in this case, we must find in the text of § 145 a “specific and explicit” authorization from Congress. See Alyeska Pipeline, 421 U.S. at 260, 95 S.Ct. 1612. Without express authority, the ordinary meaning of “expenses” or § 145’s legislative history has to provide it. A searching review exposes no such authorization.
A.
The language of § 145 does not explicitly grant us authority to shift attorneys’ fees. Section 145 requires a patent applicant electing to challenge the PTO’s unfavorable decision in district court to pay “[a]ll the expenses of the .proceedings.” 35 U.S.C. § 145 (emphasis added). The phrase “attorneys’ fees” is not mentioned, and Congress’s use of “expenses” is not the type of “specific and explicit” language that permits the award of attorneys’ fees. See Summit Valley, 456 U.S. at 722, 102 S.Ct. 2112 (noting that statute does not expressly mention attorneys’ fees); Key Tronic, 511 U.S. at 814-15, 114 S.Ct. 1960 (same); F. D. Rich Co. v. U.S. for the Use of Indus. Lumber Co., 417 U.S. 116, 126, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) (same).
In this case, the omission of “attorneys’ fees” from § 145 is particularly telling. When Congress wanted to make attorneys’ fees available in a patent litigation, it knew how to do so. Section 285 of the America *1362 Invents Act, for example, provides: “The court in exceptional cases may award reasonable attorney fees to the prevailing party.” 35 U.S.C. § 285 (emphasis added). Several other sections of the Patent Act cross-reference § 285, and each of those sections recognizes the availability of “attorney fees” under § 285. See, e.g., id. § 271(e)(4); § 273(f). Similarly, Section 297 of the ALA permits a customer who has been defrauded by an invention promoter to recover “reasonable costs and attorneys’ fees,” in addition to other damages incurred by the customer. Id. § 297(b)(1) (emphasis added).
It is a fundamental principle of statutory interpretation that, “[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)). Congress decided to exclude “attorney fees” from § 145 but not § 285—the exact type of disparate exclusion we ordinarily presume to be intentional.[1] The omission of attorneys’ fees from § 145 “strongly suggests] a deliberate decision not to authorize such awards.” Key Tronic, 511 U.S. at 818-19, 114 S.Ct. 1960. It reveals Congress’s intent “to pick and choose among its statutes and to allow attorneys’ fees under some, but not others.” Alyeska Pipeline, 421 U.S. at 263, 95 S.Ct. 1612.
Congress’s knowledge of the American Rule lends even more force to this argument. At least as early as 1973, Congress formed subcommittees to study attorneys’ fees and other issues affecting legal services. See F. D. Rich Co., 417 U.S. at 131 & n.20, 94 S.Ct. 2157. And when warranted, Congress has drafted statutes to overcome the American Rule. See Hensley, 461 U.S. at 429, 103 S.Ct. 1933 (stating that Congress enacted Civil Rights Attorney’s Fees Awards Act of 1976 in response to American Rule to provide explicit authorization for shifting attorneys’ fees). As it did with the Civil Rights Attorney’s Fees Awards Act of 1976, Congress could have revised § 145 to expressly provide for the award of attorneys’ fees. Congress, however, did not. We should defer to Congress’s decision. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (“When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.”).
B.
Because § 145 lacks specific and explicit statutory authority to shift attorneys’ fees, we must be able to glean a congressional intent to do so from the ordinary meaning of “expenses” or the legislative history of § 145. The majority concludes that the ordinary meaning of “expenses” necessarily includes attorneys’ fees.[2]1 disagree.
It is a fundamental canon of statutory construction that, “ ‘[u]nless otherwise de *1363 fined, words will be interpreted as taking their ordinary, contemporary, common meaning’ at the time Congress enacted the statute.” Amoco Prod. Co. v. S. Ute Indian Tribe, 526 U.S. 865, 873-74,119 S.Ct. 1719, 144 L.Ed.2d 22 (1999) (quoting Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). As the Director points out in her brief, Congress amended the Patent Act in 1839 to require that “the whole of the expenses of the proceeding shall be paid by the applicant, whether the final decision shall be in his favor or otherwise.” Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354; Appellant Br. 21. In the 1830s, the definition of “expense” included “cost,” and the definition of “cost” included “expense.” J.E. Worcester, A Pronouncing and Explanatory Dictionary of the English Language with Pronouncing Vocabularies of Classical and Scripture Proper Names 75, 117 (1830); see also Noah Webster et al., An American Dictionary of the English Language 197, 319 (Joseph Emerson ed., 1830) (listing definition for “expense” as “cost” and vice versa). Moreover, the words “expense,” “cost,” and “damage” were considered synonymous around the time of the 1839 Amendments. Peter Mark Roget, Thesaurus of English Words and Phrases 227 (Barnas Sears ed., 1856).
These definitions suggest that, at the time Congress introduced the word “expenses” into the Patent Act, its ordinary meaning did not include attorneys’ fees. The Supreme Court has twice held that the word “damages”—a synonym for “expenses” at the time of enactment—is insufficient to override the American Rule. See Summit Valley, 456 U.S. at 722-23, 102 S.Ct. 2112 (“Ordinarily a statutory right to ‘damages’ does not include an implicit authorization to award attorney’s fees. Indeed, the American Rule presumes that the word ‘damages’ means damages exclusive of fees.” (emphasis added)); Arcambel, 3 U.S. (3 Dali.) at 306. And even the majority agrees that the word “costs” cannot displace the American Rule. See Maj. Op. 1356-57. There can be no doubt that the ordinary meaning of “expenses” at the time of its inclusion in the Patent Act falls short of overcoming the American Rule. That the PTO did not rely on this provision to seek attorneys’ fees for over 170 years supports the understanding that it is far from clear whether “[a]ll the expenses of the proceedings” includes attorneys’ fees.
Congress’s frequent use of “expenses” and “attorneys’ fees” in other statutory provisions further reinforces that “[a]ll the expenses of the proceedings” does not necessarily include attorneys’ fees. The U.S. Code is replete with examples of Congress awarding “expenses” and then separately clarifying that attorneys’ fees are also available. See, e.g., 11 U.S.C. § 363(n) (authorizing trustee to recover “any costs, attorneys’ fees, or expenses incurred” in certain situations); 12 U.S.C. § 1464(d)(l)(B)(vii) (“[C]ourt ... may allow to any such party reasonable expenses and attorneys’ fees.”); 12 U.S.C. § 1786(p) (“Any court having jurisdiction of any proceedings instituted under this section ... may allow to any such party such reasonable expenses and attorneys’ fees as it deems just and proper....”); 12 U.S.C. § 5005(b)(2)(B) (providing that, in absence of breach of warranty, amount of indemnity shall be sum of “interest and expenses (including costs and reasonable attorney’s fees and other expenses of representation)”); 25 U.S.C. § 1401(a) (discussing “payment of attorney fees and litigation expenses”); 26 U.S.C. § 6673(a)(2)(A) (allowing recovery of “excess costs, expenses, and attorneys’ fees” against attorney who vexatiously multiplied proceedings); 15 U.S.C. § 77z-l(a)(6) (discussing “[tjotal attorneys’ fees and expenses” that can be awarded by court); 2 U.S.C. § 396 (“The committee may allow any party reim *1364 bursement from the applicable accounts of the House of Representatives of his reasonable expenses of the contested election case, including reasonable attorneys fees...10 U.S.C. § 2409(c)(1)(C) (permitting agency head to require that contractor pay “an amount equal to the aggregate amount of all costs and expenses (including attorneys’ fees and expert witnesses’ fees)” in connection with complaint regarding a reprisal); 15 U.S.C. § 2310(d)(2) (permitting recovery of sum “equal to the aggregate amount of cost and expenses (including attorneys’ fees based on actual time expended)”); 28 U.S.C. § 1447(c) (“An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.”); 29 U.S.C. § 1370(e)(1) (“[T]he court in its discretion may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney’s fees.... ”); 30 U.S.C. § 938(c) (allowing successful miner to recover “a sum equal to the aggregate amount of all costs and expenses (including the attorney’s fees)”); 31 U.S.C. § 3730(d)(1) (“Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys’ fees and costs.”); 33 U.S.C. § 1367(c) (“[A] sum equal to the aggregate amount of all costs and expenses (including the attorney’s fees) ... shall be assessed.... ”); 38 U.S.C. § 4323(h)(2) (“[T]he court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses.”); 41 U.S.C. § 4705(d)(1)(C) (noting that head of agency may “[ojrder the contractor to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys’ fees and expert witnesses’ fees) that the complainant reasonably incurred”); 42 U.S.C. § 247d-6d(e)(9) (permitting party to recover “reasonable expenses incurred ... including a reasonable attorney’s fee”).
The message is clear: Congress did not view “[a]ll the expenses of the proceedings” as necessarily including “attorneys’ fees.” If “expenses” included “attorneys’ fees,” there would be no reason for Congress to specify the availability of attorneys’ fees in statutes that already provide for the award of expenses. Instead, the logical implication is that “expenses” and “attorneys’ fees” mean different things and that expenses do not necessarily include attorneys’ fees. At best, Congress’s reference to “[a]ll the expenses” is ambiguous. As such, Congress’s intent is not clear, and the statutory language does not overcome the American Rule.
Although Congress has enacted statutes that award the government attorneys’ fees in a district court action, in each circumstance, Congress explicitly referred to attorneys’ fees, making its fee-shifting intent abundantly clear. For example, in the context of an agency enforcement action for assessment of a civil penalty, 42 U.S.C. § 7413(a)(5)(B) provides that “[a]ny person who fails to pay on a timely basis a civil penalty ordered or assessed under this section shall be required to pay ... the United States enforcement expenses, including but not limited to attorneys fees.” Likewise, 33 U.S.C. § 1319(g)(9)(B) provides that “[a]ny person who fails to pay on a timely basis the amount of an assessment of a civil penalty ... shall be required to pay [the agency] ... attorneys fees and costs for collection proceedings.” Unlike these statutes, Congress’s alleged intent to award attorneys’ fees to the government in § 145 actions is not so clear.
Finally, if § 145 were a fee-shifting statute, it would represent a particularly unusual divergence from the American Rule because it obligates even successful plain *1365 tiffs to pay the PTO’s attorneys’ fees. “[W]hen Congress has chosen to depart from the American rule by statute, virtually every one of the more than 150 existing federal fee-shifting provisions predicates fee awards on some success by the claimant.” Ruckelshaus v. Sierra Club, 463 U.S. 680, 684, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); see also Baker Botts, 135 S.Ct. at 2164 (recognizing deviations from American Rule “tend to authorize the award of ‘a reasonable attorney’s fee,’ ‘fees,’ or ‘litigation costs,’ and usually refer to a ‘prevailing party in the context of an adversarial ‘action.’”). Nothing in § 145 confines the award of expenses to a prevailing party. Instead, it requires the applicant to pay “[a]ll the expenses of the proceedings,” which according to the majority means the applicant pays for the PTO’s attorneys’ fees in every § 145 proceeding. In these atypical circumstances, I think Congress’s intent to award the PTO attorneys’ fees in every case should have been more clear. I cannot agree that Congress used the word “expenses” to effect such an unusual departure from the American Rule—a departure that would saddle even prevailing applicants with the PTO’s attorneys’ fees.[3]
C.
The maintenance of a robust American Rule also finds support in public policy. For example, uncertainty is inherent in any litigation, and “one should not be penalized for merely defending or prosecuting a lawsuit,” as this could have a disproportionate effect in discouraging less wealthy individuals “from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents’ counsel.” Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); see also Summit Valley, 456 U.S. at 725, 102 S.Ct. 2112 (“[C]onsiderations [favoring application of the American Rule] include the possible deterrent effect that fee shifting would have on poor litigants with meritorious claims.”). Independent advocacy could also be threatened, the Supreme Court warned, “by having the earnings of the attorney flow from the pen of the judge before whom he argues.” F. D. Rich Co., 417 U.S. at 129, 94 S.Ct. 2157. Finally, if the word “expenses” in every statute or contract trumped the American Rule, then “the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney’s fees would pose substantial burdens for judicial administration.” Fleischmann, 386 U.S. at 718, 87 S.Ct. 1404.
Here, the majority’s interpretation would compel any prospective patentee who avails herself of the review afforded by § 145 to pay the PTO’s attorneys’ fees even if the applicant prevails and proves error by the PTO.[4] These high and uncertain costs will likely deter applicants, particularly solo inventors and other smaller entities, from pursuing review under *1366 § 145. And every § 145 proceeding would involve litigation over whether the PTO’s attorneys’ fees were reasonable, creating an additional burden for the district court. I am not convinced that Congress intended such an outcome.
III.
The majority’s arguments to the contrary do not persuade me to conclude otherwise. The majority relies heavily on our statement in Hyatt v. Kappos, 625 F.3d 1320, 1337 (Fed. Cir. 2010) that plaintiffs who proceed under § 145 bear “the heavy economic burden of paying ‘[a]ll the expenses of the proceedings’ regardless of outcome.” Maj. Op. 1355, 1360. This observation, however, does not require that expenses include attorneys’ fees. Indeed, the PTO has traditionally interpreted this statutory language to include expert fees, court reporter fees, deposition travel expenses, and printing expenses—all of which can be significant and pose a “heavy economic burden” in district court litigation.
The majority also claims that its holding is consistent with opinions from the Second and Fourth Circuits that have interpreted “expenses” to include attorneys’ fees. But the rationale adopted by the majority diverges from that of the Fourth Circuit in Shammas v. Focarino, 784 F.3d 219 (4th Cir. 2015), and the Second Circuit’s opinion in United States v. 110-118 Riverside Tenants Corp., 886 F.2d 514 (2d Cir. 1989) is easily distinguished.[5]
In interpreting a section of the Lanham Act requiring the party bringing the case to pay “all the expenses of the proceeding,” 15 U.S.C. § 1071(b)(3), the Shammas majority[6] found the American Rule did not apply. Shammas, 784 F.3d at 223. Only after dispatching with the strong presumption against fee shifting embodied in the American Rule—a rule that the majority here assumes is applicable—was the Shammas court able to interpret the ordinary meaning of “expenses” to cover attorneys’ fees. Id. at 224. Simply reaching the same result, however, does not make the majority’s opinion consistent with Sham-mas. This is particularly so here because the two opinions offer conflicting views on the applicability of the foundational common law principle embodied in the American Rule.
The Second Circuit’s decision in 110-118 Riverside is inapposite because it does not address the interpretation of “expenses” in a contract or statutory provision. Instead, 110-118 Riverside dealt with an apartment corporation that incurred expenses in foreclosing a lien that the government placed on one of the apartment corporation’s tenants. The government bore responsibility *1367 for foreclosing the tax lien, but the apartment corporation effectuated the foreclosure and shouldered the expenses associated with the proceeding. Because it was the government’s duty to foreclose the tax lien, the court found no reason why the government should not reimburse the apartment corporation for the expenses of the foreclosure proceeding, including attorneys’ fees. 110-118 Riverside, 886 F.2d at 520. As these facts demonstrate, 110-118 Riverside is a case where a private party performed the legal obligations of the government and was made whole for its efforts; it does not involve the interpretation of a statute in the context of adversarial litigation to determine whether Congress specifically and explicitly provided for the recovery of attorneys’ fees by one party against the other based on its use of the word “expenses.”
Next, the majority relies on dictionary definitions to illuminate the ordinary meaning of “expenses.” The majority’s dictionaries, however, are from 1998 and 2014—they are not contemporaneous with Congress’s introduction of the word “expenses” into the Patent Act in 1889. Therefore, they shed no light on the ordinary meaning of “expenses” more than 175 years ago. See Amoco Prod. Co., 526 U.S. at 873-74, 119 S.Ct. 1719 (“ ‘[UJnless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning’ at the time Congress enacted the statute.” (alteration in original) (emphasis added) (quoting Perrin, 444 U.S. at 42, 100 S.Ct. 311)). And unlike the 1998 definition from Wright and Miller,' the contemporaneous definitions do not mention “attorneys’ fees.” See Section II.B, supra.
Finally, the majority posits that the litany of statutory provisions separately specifying both “expenses” and “attorneys’ fees” demonstrates Congress’s desire not to be restricted to a single word or phrase when awarding attorneys’ fees. See Maj. Op. 1358. These statutes, in my view, compel the opposite conclusion, especially when read in light of the American Rule. As explained above, there would be no reason for Congress to provide for the award of “attorneys’ fees” in numerous statutory provisions where it also permits the award of expenses if the contemporaneous, ordinary, and well-known meaning of “expenses” necessarily included attorneys’ fees. Rather, in the context of § 145, the term “expenses” is ambiguous and shows no clear intent to award attorneys’ fees.
IV.
The American Rule is the starting point for our analysis, and it imposes a high bar for any litigant seeking to shift its attorneys’ fees to the opposing party. Despite assuming the American Rule’s applicability to this case, the majority believes § 145 provides the requisite authorization. But § 145 lacks the specific and explicit provision for the allowance of attorneys’ fees, and the ordinary meaning of “expenses” fails to fill the void. I respectfully dissent.

. Congress has expressly awarded attorneys’ fees in many other statutory contexts. See, e.g., 7 U.S.C. § 2565 (“The court in exceptional cases may award reasonable attorney fees to the prevailing party.”); 10 U.S.C. § 1089(f)(2) (recognizing that statute provides "the authority to provide for reasonable attorney’s fees”); 15 U.S.C. § 1117(a) (permitting award of "reasonable attorney fees to the prevailing party” for certain trade-mark violations); 22 U.S.C. § 277d-21 (permitting Commissioner to "allow reasonable attorneys' fees”); 42 U.S.C. § 2000e-16c(e) (stating "attorney's fees may be allowed by the court”); 46 U.S.C. § 41305(e) ("[T]he prevailing party may be awarded reasonable attorney fees.”).

. The majority does not rely on the legislative history to support its position.

. The majority repeatedly mischaracterizes the dissent as advocating for a rigid requirement that would bar the award of attorneys’ fees unless Congress invoked those exact words. See Maj. Op. 1358, 1358-59, 1359 n.8. This is incorrect. My opinion only addresses whether the word “expenses” is a specific and explicit directive from Congress to shift attorneys’ fees or whether § 145 otherwise signals Congress's intent to make an award of attorneys’ fees available. I express no opinion as to what other words carry enough weight to displace the American Rule.

. The AIA offers two options for judicial review of a Board decision rejecting a patent application. The applicant can appeal to the Federal Circuit under § 141 or it can file a civil action in the Eastern District of Virginia against the Director of the PTO under § 145. See Kappos v. Hyatt, 566 U.S. 431, 132 S.Ct. 1690, 1694, 182 L.Ed.2d 704 (2012). Seeking review under § 145 offers certain benefits to the applicant, including the ability to conduct discovery and introduce additional evidence. See id. at 1700-01.

. In addition, the majority cites to dicta in Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012) as evidence that the Supreme Court has blessed its interpretation of “expenses.” As described by the Court, the question presented in Taniguchi was whether the phrase "compensation of interpreters” includes the cost of translating written documents. The Court answered this question by concluding that "both the ordinary and technical meanings of 'interpreter,' as well as the statutory context in which the word is found, lead to the conclusion that § 1920(6) does not apply to translators of written materials.” Id. at 2005. Only then did the Court explain that its holding was consistent with the "narrow scope of taxable costs,” which it characterized as a fraction of the nontaxable expenses. Id. at 2006. It never interpreted a statutory provision containing the word "expenses” to include attorneys’ fees.

. Judge King dissented. In his view, the American Rule controls the analysis, and attorneys’ fees should not be shifted because the statutory provision at issue "makes no reference to attorney’s fees awards and does not reflect a Congressional intention to authorize such awards.” Shammas, 784 F.3d at 227 (King, J., dissenting).